## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| EVERETT DE'ANDRE ARNOLD, K.B., a minor by and through his mother and next friend, CINDY BRADFORD, and SANDY ARNOLD | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| BARBERS HILL INDEPENDENT SCHOOL DISTRICT; BARBERS HILL INDEPENDENT SCHOOL DISTRICT's BOARD OF TRUSTEES; GEORGE BARRERA, in his individual and official capacity; FRED SKINNER, in his individual and official capacity; CYNTHIA ERWIN, in her individual and official capacity; BECKY TICE; in her individual and official capacity; BENNY MAY; in his individual and official capacity; ERIC DAVIS, in his individual and official capacity; CLINT PIPES, in his individual and official capacity; GREG POOLE, in his individual and official capacity; SANDRA DUREE, in her individual and official capacity; MANDY MALONE, in her individual and official capacity; RICK KANA, in his individual and official capacity; RYAN RODRIGUEZ in his individual and official capacity; DOUG ANDERSON, in his individual and official capacity; KIRVEN TILLIS, in his individual and official capacity. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

\_\_\_\_\_ Civ. _____ (\_\_\_\_)

JURY TRIAL REQUESTED

## <u>PLAINTIFFS' ORIGINAL COMPLAINT</u>

Plaintiffs Everett De'Andre Arnold ("De'Andre"), Sandy Arnold, and Cindy Bradford on behalf of her minor son K.B. (collectively, the "Plaintiffs"), file this action for declaratory judgment, permanent injunctive relief, damages, costs, and attorneys' fees stemming from the unlawful infringement on their constitutional rights and violations of federal and state statutes.

1

Made defendants herein are Barbers Hill Independent School District ("BHISD" or the "District"); BHISD's Board of Trustees (the "Board"); individual Board members George Barrera, Fred Skinner, Cynthia Erwin, Becky Tice, Benny May, Eric Davis and Clint Pipes ("Trustees"); BHISD Superintendent Dr. Greg Poole ("Superintendent Poole"); BHISD Deputy Superintendent Sandra Duree ("Ms. Duree"); BHISD Coordinator of Student Services Mandy Malone ("Ms. Malone"); Barbers Hill High School Principal Rick Kana ("Principal Kana"); Assistant Principal Ryan Rodriguez ("AP Rodriguez"); Assistant Principal Doug Anderson ("AP Anderson"); and CTE Coordinator Kirven Tillis ("Mr. Tillis" and, collectively with the remaining defendants, "Defendants").

## PRELIMINARY STATEMENT

1.        Black students are and have been disproportionately targeted and penalized for violating facially race-neutral grooming policies that are designed to, and have the effect of, profiling, singling out, and burdening Black children for wearing their hair in its natural state, including in locs.[1]  The length of locs have no bearing on students' capacity to learn, yet these wholly arbitrary grooming policies limit the mobility of Black children in public and private spaces, deny them equal educational opportunities, and strike at the freedom and dignity of Black people.

2.        These grooming policies ultimately present Black students with an unfair choice: *either* wear their hair in natural formations and be deprived of adequate educational resources *or* conform their hair to predominant Eurocentric hair aesthetics to receive the same educational

---

[1] The term "locs" is used herein rather than "dread locks."  The term "dread" in the word "dread locks" comes from the word "dreadful" used by English slave traders to refer to Africans' hair, which it is surmised had loc'd naturally on its own during the Middle Passage.  *See* April Williams, *My Hair is Professional Too!: A Case Study and Overview of Laws Pertaining to Workplace Grooming Standards and Hairstyles Akin to African Culture*, 12 S. J. POL'Y & JUST. 138, 165-66 (2018).

opportunities as their white peers.  De'Andre and K.B. were faced with the impossible choice of either suppressing their cultural heritage and Black identity by cutting their natural hair or forfeiting their right to equal educational and extracurricular opportunities.

3.  BHISD is a predominantly white school district, with a student population that is 69% white and only 3% Black.  De'Andre and K.B. started growing their locs while attending middle school within BHISD as an important symbol of their Black identity and cultural heritage. Specifically, De'Andre's locs are an outward expression of his paternal West Indian roots; K.B.'s locs are an expression of his Black identity and culture.  De'Andre's and K.B.'s culturally significant locs have never disrupted the educational environment at BHISD or inhibited De'Andre's and K.B.'s academic and extracurricular success.

4.  For several years and culminating in the 2019-2020 school year, Defendants made it their objective to suppress De'Andre's and K.B.'s expression of their identity and heritage through their natural hair by (1) continually monitoring and targeting De'Andre's and K.B.'s hair, and (2) promulgating and selectively enforcing arbitrary and discriminatory hair policies to force De'Andre and K.B. to cut their culturally significant locs.  The hair policy crafted and enforced by BHISD has no legitimate purpose, is wholly arbitrary, and impermissibly regulates how students can wear their hair both inside *and outside* of school.  Defendants' promulgation and selective enforcement of this policy constitutes unlawful, intentionally discriminatory, and punitive violations of Plaintiffs' constitutional rights, as well as state and federal law.

5.  De'Andre and K.B. continually complied with the changing iterations of BHISD's hair policy.  Yet, BHISD administrators routinely removed De'Andre and K.B. from class and disrupted other school activities to check their hair and reprimand them for anticipated non-compliance with the school's hair policy.

6.     BHISD administrators did not target and surveil non-Black students in the way they monitored De'Andre and K.B.  The District's regular monitoring and inspection of De'Andre and K.B. ostracized them and singled them out from their white classmates.

7.     The Defendants engaged in this focused and continued effort to force De'Andre and K.B. to cut their culturally significant locs because the Defendants viewed their natural Black hair as "messy" and contrary to BHISD's "high standards."

8.     During the 2016-2017 school year, De'Andre's locs grew long enough to extend past his eyebrows.  Plaintiffs complied with BHISD's hair policy by securing their locs with discrete hair accessories.  In response, before the 2017-2018 school year, BHISD arbitrarily amended its hair policy to prohibit male students from wearing hair accessories.

9.     Defendants then amended the BHISD hair policy for a second time in the 2018-2019 school year to prohibit male students from having hair extend, *at any time,* beyond their eyebrows, or below the earlobes or top of a t-shirt collar.  Despite Defendants' failure to offer any logic or justification for the policy, De'Andre and K.B. continued to comply with the discriminatory mandates by securing their locs in a bun with their own hair or non-visible hairclips.

10.     Not to be deterred, BHISD announced in the Fall of 2019 that it intended to amend its hair policy for a third time in a manner that once again targeted De'Andre and K.B.  Mrs. Arnold thereafter voiced her concern and complaints to BHISD and the Board about the wholly arbitrary hair policy and its selective enforcement against, and discriminatory effect on, De'Andre and K.B.  In retaliation, Defendants adopted a new hair policy for BHISD targeted at natural locs in December 2019, such that male students were prohibited from having hair that could "extend below the top of a t-shirt collar, below the eyebrows, or below the ear lobes *when let down*." (emphasis added).  The revised policy also removed language permitting cornrows and locs.  This

4

was the *third* modification to the school's hair policy since De'Andre and K.B. started growing their culturally significant locs.

11.    De'Andre and K.B. were then told by Principal Kana that, pursuant to BHISD policy, they would have to cut their locs in order to be allowed to return to school for the Spring 2020 semester.  If De'Andre and K.B. chose not to cut their locs, they would be immediately placed in in-school suspension ("ISS"), sent to alternative school, and prohibited from participating in extracurricular events and activities (including De'Andre's upcoming graduation ceremony).  Ultimately, De'Andre and K.B. were forced to withdraw from BHISD and enroll in a new high school to avoid further discrimination and disruption to their education, causing significant trauma and turmoil to their emotional health and development.

12.    BHISD's hair policy is wholly arbitrary, intentionally discriminatory based on race and gender (including facially discriminatory language on the basis of gender), and unfairly and selectively enforced against Black male students.  There is no legitimate educational motive or goal furthered by the hair policy's requirement that male students' hair comply with an arbitrary length requirement or Defendants' discriminatory and retaliatory conduct against De'Andre, K.B., and their families.

13.    Defendants' promulgation and enforcement of BHISD's hair policy, along with its retaliatory response to Mrs. Arnold's complaints about same, are unlawful, discriminatory, and punitive violations of Plaintiffs' constitutional rights, as well as state and federal law.  Plaintiffs bring this civil rights action against Defendants for:

> (1)    Race discrimination in violation of the Fourteenth Amendment right to equal protection;

> (2)    Race discrimination in violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ("Title VI");

(3)     Sex discrimination in violation of the Fourteenth Amendment right to equal protection;

(4)     Sex discrimination in violation of Title IX the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX");

(5)     Violation of the First Amendment right to free speech;

(6)     Retaliation in violation of the First Amendment;

(7)     Retaliation in violation of Title VI;

(8)     Retaliation in violation of Title IX;

(9)     Race discrimination in violation of Texas Civil Practice and Remedies Code § 106.001;

(10)    Sex discrimination in violation of Texas Civil Practice and Remedies Code § 106.001; and

(11)    Declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

14.     Accordingly, Plaintiffs seek (1) declaratory relief announcing that BHISD's hair policy violates state and federal law; (2) an order enjoining Defendants from enforcing BHISD's hair policy; (3) an order enjoining Defendants from discriminatorily enforcing BHISD's hair policies and retaliating against students' parents for critiquing school policies; (4) an order expunging any disciplinary sanctions on Plaintiffs' school records related to the hair policy; (5) compensatory damages for the injuries caused by Defendants' unlawful conduct; and (6) punitive damages assessed to deter Defendants' intentional or reckless deviations from the law.

## JURISDICTION AND VENUE

15.     Plaintiffs bring this action pursuant to 42 U.S.C. § 1983 to redress the deprivation of Plaintiffs' rights as secured by the First and Fourteenth Amendments to the U.S. Constitution. Plaintiffs also seek relief under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.*,

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, 28 U.S.C. §2201 *et seq.*, and Texas Civil Practice and Remedies Code § 106.001.

16.     This Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law.  This Court also has jurisdiction under 28 U.S.C. § 1343(a) because Plaintiffs seek damages for violations of their civil rights. Supplemental jurisdiction over Plaintiffs' state law claims is proper pursuant to 28 U.S.C. § 1367.

17.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in the Southern District of Texas.

## PARTIES

18.     Plaintiff De'Andre Arnold is an 18-year-old high school senior at Ross S. Sterling High School in Goose Creek Consolidated Independent School District.  De'Andre previously attended Barbers Hill High School in BHISD and hopes to return to, and graduate from, Barbers Hill High School.  De'Andre was forced to leave Barbers Hill High School in January 2020 because BHISD's new hair length policy would require that De'Andre continually cut his locs, which he started growing in 2014 as an expression of his Black identity and West Indian heritage.

19.     Plaintiff K.B. is De'Andre's cousin.  He is a 16-year-old high school sophomore at Ross S. Sterling High School in Goose Creek Consolidated Independent School District.  K.B. was forced to leave Barbers Hill High School in February 2020 because the District's new hair length policy would require him to continually cut his locs, which he started growing in 2016 and is an expression of his Black identity and cultural heritage.  K.B. appears by and through his mother and next friend, Cindy Bradford ("Ms. Bradford"), who brings this suit on his behalf.

20.     Plaintiff Sandy Arnold is the mother of Plaintiff De'Andre Arnold and aunt of Plaintiff K.B.  Mrs. Arnold has at all times supported De'Andre's and K.B.'s decisions to form

their natural hair into locs.  When the District indicated its intent to change its hair policy to prohibit male students from having long hair, Mrs. Arnold challenged the impending change at BHISD's November 18, 2019 and December 16, 2019 Board meetings.  The most recent iteration of the hair policy was created to target De'Andre and K.B., and BHISD is harshly enforcing the policy against De'Andre and K.B., in part, because Mrs. Arnold spoke out about the policy in a public forum.

21.     Defendant Barbers Hill Independent School District is a public school district in Chambers County, Texas, where Barbers Hill High School is located.  BHISD receives federal financial assistance for its programs, services, and activities.

22.     Defendant Barbers Hill Independent School District's Board of Trustees has "the exclusive power and duty to govern and oversee the management of the public schools of the district."[2]  At the beginning of each academic year, the Board creates and adopts a Student Code of Conduct, which sets forth BHISD's standards of conduct, consequences for misconduct, and procedures for administering discipline.[3]

23.     Defendant George Barrera is BHISD's Board President and has served on BHISD's Board since 2002.  As a Trustee, Mr. Barrera votes on changes to BHISD's hair policy at the beginning of and during the academic year.  Plaintiffs bring claims against Mr. Barrera in his official and individual capacities.

24.     Defendant Fred Skinner is BHISD's Board Vice President and has served on BHISD's Board since 2007.  As a Trustee, Mr. Skinner votes on changes to BHISD's hair policy

---

[2] *See* Barbers Hill ISD Board  Policy Manual, Board Legal Status Powers and Duties, BAA (LEGAL), https://pol.tasb.org/Policy/Download/280?filename=BAA(LEGAL).pdf.
[3] *See* Barbers Hill ISD Student Code of Conduct: 2019-20 School Year, https://resources.finalsite.net/images/v1566951946/bhisd/bucyejyptqmhj6ysekly/BHISDStudentCodeofConduct2019-2020finalupdatePDF.pdf.

at the beginning of and during the academic year.  Plaintiffs bring claims against Mr. Skinner in his official and individual capacities.

25.     Defendant Cynthia Erwin is BHISD's Board Secretary and has served on BHISD's Board since 2010.  As a Trustee, Ms. Erwin votes on changes to BHISD's hair policy at the beginning of and during the academic year.  Plaintiffs bring claims against Ms. Erwin in her official and individual capacities.

26.     Defendant Becky Tice is a BHISD Trustee and has served on BHISD's Board since 2009.  As a Trustee, Ms. Tice votes on changes to BHISD's hair policy at the beginning of and during the academic year.  Plaintiffs bring claims against Ms. Trice in her official and individual capacities.

27.     Defendant Benny May is a BHISD Trustee and has served on BHISD's Board since 1996.  As a Trustee, Mr. May votes on changes to BHISD's hair policy at the beginning of and during the academic year.  Plaintiffs bring claims against Mr. May in his official and individual capacities.

28.     Defendant Eric Davis is a BHISD Trustee and has served on BHISD's Board since 2018.  As a Trustee, Mr. Davis votes on changes to BHISD's hair policy at the beginning of and during the academic year.  Plaintiffs bring claims against Mr. Davis in his official and individual capacities.

29.     Defendant Clint Pipes is a BHISD Trustee and has served on BHISD's Board since May 2019.  As a Trustee, Mr. Pipes votes on changes to BHISD's hair policy at the beginning of and during the academic year.  Plaintiffs bring claims against Mr. Pipes in his official and individual capacities.

30.     Defendant Greg Poole is the Superintendent at BHISD.  Superintendent Poole is responsible for developing and enforcing procedures for the operation of BHISD including, "guidelines, handbooks, manuals, forms, and any other documents defining standard operating procedures."[4]  Plaintiffs bring claims against Superintendent Poole in his official and individual capacities.

31.     Defendant Sandra Duree is the Deputy Superintendent at BHISD.  Plaintiffs bring claims against Ms. Duree in her official and individual capacities.

32.     Defendant Mandy Malone is the Coordinator of Student Services at BHISD. Plaintiffs bring claims against Ms. Malone in her official and individual capacities.

33.     Defendant Rick Kana is the Principal at Barbers Hill High School. BHISD delegates final decision-making authority regarding the school dress code to the Principal as an administrator of a school.[5]  Principal Kana, as Principal of Barbers Hill High School, was at all relevant times the highest-ranking administrator in the school.  By virtue of his position, he was directly responsible for policy enforcement and discipline in Barbers Hill High School and supervision of its staff, including Assistant Principals Ryan Rodriguez and Doug Anderson. Plaintiffs bring claims against Principal Kana in his official and individual capacities.

34.     Defendant Ryan Rodriguez is an Assistant Principal at Barbers Hill High School. BHISD delegates final decision-making authority regarding disciplinary issues at Barbers Hill

---

[4] *See* Barbers Hill ISD Board Policy Manual, Administrative Regulations, BP (LOCAL), https://pol.tasb.org/Policy/Download/280?filename=BP(LOCAL).pdf.
[5] *See* Barbers Hill ISD Board Policy Manual, Student Conduct Dress Code, FNCA (LOCAL), https://pol.tasb.org/Policy/Download/280?filename=FNCA(LOCAL).pdf ("The District prohibits any clothing or grooming that in the principal's judgment may reasonably be expected to cause disruption of or interference with normal school operations.").

High School to AP Rodriguez as an administrator of the school.[6]  He is sued in his individual capacity and official capacity.

35.     Defendant Doug Anderson is an Assistant Principal at Barbers Hill High School. Plaintiffs bring claims against AP Anderson in his official and individual capacities.

36.     Defendant Kirven Tillis is the Career & Technical Education ("CTE") Instructor at Barbers Hill High School.  Plaintiffs sue Mr. Tillis in his official and individual capacities.

## FACTUAL BACKGROUND

### A.     Racial Discrimination in BHISD

37.     BHISD is a school district in Mont Belvieu, Texas, approximately 30 miles east of Houston, Texas.  Mont Belvieu is a racially homogeneous town.  It has a total population of 3,835 people, 87.5% of which is white and just 2.9% of which is Black.  The communities that feed into Mont Belvieu—Old River-Winfree, Cove, and Beach City—are approximately 90% white.[7]

38.     BHISD receives a total of $17,865 in revenue per student each school year.[8]  Of the total revenue per student, $331 is from the federal sources, $935 is from state sources, and $16,599 is from local sources, including property and non-property taxes.[9]

---

[6] *See* Barbers Hill ISD Student Code of Conduct: 2019-20 School Year 1, 2 https://resources.finalsite.net/images/v1566951946/bhisd/bucyejyptqmhj6ysekly/BHISDStudentCodeofConduct2019-2020finalupdatePDF.pdf.  ("As required by law, a person at each campus must be designated to serve as the campus behavior coordinator. The designated person may be the principal of the campus or any other campus administrator selected by the principal. The campus behavior coordinator is primarily responsible for maintaining student discipline.").

[7] U.S. Census Bureau, 2013–2017 American Community Survey Five-Year Estimates.

[8] Institute of Education Studies, National Center for Education Statistics, 2016-2017 Public School District Finance Peer Search, https://nces.ed.gov/edfin/search/peergroupdata.asp?dataid=1&mt=0&subdataid=1&bleaid=4809450&jobid={0AF92CD1-46A5-4D4B-9F13-18F10AFF7FF5}.

[9] *Id.*

39.     The District has 5,710 students across nine schools: one high school, one at-risk high school, two middle schools, two elementary schools, two early childhood centers, and one alternative school.

40.     BHISD is 68.7% white, 3.2% Black, 0.4% Native American, 1.3% Asian, and 24% Hispanic.  Statistics from the 2018-19 school year show that the Barbers Hill High School is 68.7% white, 3.2% Black, 0.4% Native American, 1.3% Asian, and 24% Hispanic or Latino.

41.     Black students are overrepresented in disciplinary enforcement at BHISD.[10] Approximately 3% of BHISD's student population is Black, yet Black students account for 6%— or two times their represented population—of out-of-school suspensions.[11]   Additionally, 46% percent of the students forced to attend BHISD's alternative school are non-white, yet non-white students only make up 29% of the District's total population.[12]   Moreover, at one of BHISD's middle schools, Black students are over 20 times more likely than white students to be suspended.[13]

42.     In 2017, BHISD constructively expelled a Native American child because of his hair length.  Upon information and belief, this incident is currently being investigated by the United States Department of Education's Office of Civil Rights as a potential act of racial and/or religious discrimination.

---

[10] National studies have shown that Black and Latinx students do not misbehave more often than white students, but Black and Latinx students are more often disciplined and bear the brunt of harsh, exclusionary punishment. *See* Russell J. Skiba, Ph. D. & Natasha T. Williams, *Are Black Kids Worse? Myths and Facts about Racial Differences in Behavior—A Summary of the Literature*, EQUITY PROJECT AT IND. UNIV. (Mar. 2014), https://indrc.indiana.edu/tools-resources/pdf-disciplineseries/african_american_differential_behavior_031214.pdf

[11] Lena V. Groeger, Annie Waldman, and David Eads, *Miseducation, Is there racial inequality at your school, Barbers Hill Independent School District,* PROPUBLICA (October 16, 2018), https://projects.propublica.org/miseducation/district/4809450

[12] *Id.*

[13] *Id.*

**B.      BHISD's Constructive Expulsion of De'Andre Arnold**

43.      De'Andre started attending school in BHISD in August 2006, when he was in pre-kindergarten.  As a student in BHISD, De'Andre had an A/B grade average and was actively involved in extracurricular activities, including marching band and basketball.

44.      De'Andre started growing his hair into locs in 2014 while he was a seventh-grade student at Barbers Hill Middle School North.  De'Andre began growing locs as an outward expression of his Black identity and cultural heritage, as well as to pay homage to his and his father's Trinidadian roots.

45.      Locs demonstrate reverence and obedience and are a symbol to De'Andre's West Indian ancestors.  De'Andre's cultural background prohibits cutting or trimming natural locs.

46.      When De'Andre formed his hair into locs, BHISD's hair policy required male students' hair to be off the shoulders, above the earlobes, and out of the eyes.  When De'Andre began growing his locs at Barbers Hill Middle School North, his hair did not extend below his eyebrows, earlobes, or the top of his t-shirt collar.  Still, Barbers Hill Middle School North staff members made negative comments about his hair.

47.      During the 2015-2016 academic year, when De'Andre was in the eighth grade, BHISD Deputy Superintendent of Curriculum and Instruction, Sandra Duree, entered De'Andre's classroom specifically to check his hair.  Ms. Duree did not check any other student's hair in that classroom.

48.      On another occasion during the 2015-2016 academic year, Ms. Duree told De'Andre that wearing his hair in locs did not reflect BHISD's "image of excellence" and would be a "problem" when he started high school.  Based on information and belief, Ms. Duree did not make similar comments to any other student.  Her comments made De'Andre feel unwelcome and inferior.

13

49.     Shortly after Ms. Duree made these comments, De'Andre and his mother met in person with BHISD Superintendent Greg Poole about the negative attention De'Andre was receiving from school administrators because of his hair.  During this meeting, Mrs. Arnold told Superintendent Poole that she believed the negative comments and attention De'Andre received were attempts to force De'Andre to assimilate to the District's arbitrary standards of acceptable grooming and appearance.

50.     De'Andre started his freshman year at Barbers Hill High School in August 2016. At the start of the 2016-2017 academic year, De'Andre's locs had grown to a length that fell below his eyebrows when loose.  For the 2016-2017 academic school year, BHISD's hair policy stated in relevant part, "[b]oy's [sic] hair will not extend below the eyebrows, below the earlobes, or below the top of a t-shirt collar.  Corn rows and/or dread locks are permitted if they meet the aforementioned lengths," and, "[b]oys are not permitted to wear hair accessories deemed inappropriate."

51.     De'Andre's Assistant Principal Ryan Rodriguez and CTE Instructor Kirven Tillis consistently watched De'Andre while he was in the lunchroom with his friends.  Teachers and administrators would often stand near his lunch table and stare at De'Andre and his friends while they ate.  These actions made De'Andre feel uncomfortable and unnerved.  Around that same time, AP Rodriguez and Mr. Tillis described De'Andre's hair as "messy."

52.     After this encounter and to comply with BHISD's hair length policy, De'Andre began securing his hair back with a thin black headband to keep his hair above his eyebrows, earlobes, and shirt collar.  On multiple occasions during the 2016-2017 academic year, Principal Kana assured De'Andre and Mrs. Arnold that De'Andre's hair was appropriate and complied with the hair policy when utilizing a headband to pull back his hair in this manner.

14

53.     In advance of the 2017–2018 academic year and for the first time since De'Andre began growing his locs, BHISD modified its hair policy to prohibit male students from wearing hair accessories of any kind.  Defendants failed to offer any justification for the policy change. Principal Kana assured De'Andre that his hair was appropriate and complied with the hair policy if the headband was not visible.

54.     At the beginning of the 2018-2019 academic year, BHISD modified its hair policy for the second time since De'Andre began growing his locs to further restrict the manner in which male students could wear their hair, stating in relevant part that, "[b]oys' hair will not extend, *at any time,* below the eyebrows, below the earlobes, or below the top of a t-shirt collar.  Corn rows and/or dread locks are permitted if they meet the aforementioned lengths." (emphasis added). Defendants again failed to offer any justification for the policy change.

55.     To comply with BHISD's then-new hair length policy, De'Andre used rubber hair bands to pull his hair back in a tight bun while in school or at after-school events in addition to his headband.

56.     Principal Kana told De'Andre that his locs styled this way—pulled back with a headband and secured up with a rubber band—complied with the then-operative hair policy.

57.     Notwithstanding Principal Kana's approval, school administrators continued to track and monitor De'Andre in the classroom and ask about his hair.  This intense observation did not happen to other students.  De'Andre felt that he was being targeted and that school administrators treated him differently than other students who similarly had long hair.

58.     De'Andre started his senior year at Barbers Hill High School on August 15, 2019. When De'Andre arrived at school that day, his hair was secured such that it did not extend below his eyebrows, earlobes or shirt collar.

15

59.     During the school day, two of De'Andre's locs loosened and fell below his collar; he immediately refastened his locs to comply with the hair policy.  De'Andre was still removed from class by Barbers Hill High School Assistant Principal Alicia Brooks and placed in ISS for the remainder of the school day for allegedly violating—however briefly—the hair policy.

60.     BHISD's Student Handbook states that students will be given until the following school day to correct hair violations.  However, this courtesy was not extended to De'Andre.  Upon information and belief, BHISD has not placed any female or non-Black students in ISS for any similar alleged temporary violation of BHISD's hair policy.

61.     On August 16, 2019, De'Andre, Mrs. Arnold, and David Arnold, De'Andre's father, met with Principal Kana and Ms. Malone regarding De'Andre's ISS and hair policy compliance.  Principal Kana reiterated that De'Andre's hair complied with the hair policy as long as it was secured without rubber bands or hair adornments such that it did not extend below his eyebrows, earlobes, or top of a t-shirt collar.

62.     At this meeting, Ms. Malone commented that De'Andre's locs were "just a hairstyle."  In response, Mrs. Arnold contended that De'Andre's hair was not just a "style"—his locs were culturally and personally significant to his heritage.

63.     De'Andre returned to school the following day, on August 17, 2019, with his hair tied back with a single loc from his own head.

64.     Midway through the 2019-2020 school year, BHISD modified its hair policy again. The revised policy, in relevant part, states that "[m]ale students' hair will not extend, at any time, below the eyebrows, or below the ear lobes.  Male students' hair must not extend below the top of a t-shirt collar *or be gathered or worn in a style that would allow the hair to extend below the top of a t-shirt collar, below the eyebrows, or below the ear lobes <u>when let down</u>*." (emphasis added).

The hair policy does not similarly regulate female students' unencumbered hair.  Notably, the revised policy also removed language in the previous policy expressly permitting cornrows and locs.

65.     On December 17, 2019, De'Andre learned from Principal Kana that BHISD's new hair policy would be strictly enforced after students returned from Winter break in January 2020. Principal Kana further stated that if De'Andre was not in compliance with the hair policy upon his return from Winter break, he would be sent to ISS or the alternative high school.

66.     On January 7, 2020, De'Andre returned to school with his hair in a headband and pulled back to ensure that his hair did not fall below his eyebrows, earlobes, or shirt collar. De'Andre immediately went to the office so he could have his hair approved without the threat of being called out of class.  Principal Kana and Ms. Duree were in the office.  Ms. Duree told De'Andre that his hair was out of dress code because it would be too long if let down.  Principal Kana suggested that De'Andre braid his locs up to comply with the hair policy.

67.     De'Andre missed school on January 8 and January 9 to braid his locs in the manner suggested by Principal Kana.  De'Andre returned to school on January 10 with his hair cornrowed. De'Andre was again told by Principal Kana that, according to his superiors, De'Andre's hair was out of dress code.  Principal Kana then suggested that De'Andre return to school with his hair cornrowed in a spiral to comply with the hair policy.

68.     De'Andre subsequently braided and styled his locs in the manner suggested by Principal Kana.

69.     De'Andre returned to school on the morning of January 14 with his hair cornrowed into a spiral such that it did not extend below his eyebrows, earlobes or shirt collar.  However,

Principal Kana told De'Andre that, according to his superiors, De'Andre's hair was still out of dress code.

70.     Principal Kana demanded that De'Andre send him a picture of De'Andre's hair down before returning to school so that he could determine whether De'Andre's hair complied with the new hair policy.  Principal Kana advised that if De'Andre's hair was extended below De'Andre's eyebrows, earlobes or shirt collar when let down, De'Andre would be placed in ISS and barred from attending all school-related activities, including sporting events, prom, and graduation.  Principal Kana told De'Andre that he did not believe De'Andre would be allowed to return to school without cutting his hair.

71.     Upon information and belief, no female or non-Black students were targeted in this manner and specifically asked to send photographs of their hair *prior* to entry into Barbers Hill High School.

72.     De'Andre, in consultation with his parents, opted to not cut his hair because of its personal and cultural significance, and left Barbers Hill High School's campus that morning on January 14.

73.     De'Andre returned to school later that day, January 14, with his cousin, K.B., and his mother, Sandy Arnold.  Although Defendants knew De'Andre's locs are an expression of his Black and West Indian heritage and were not disruptive to BHISD's educational goals, De'Andre was instructed that he could not return to class unless he cut his locs.

74.     De'Andre was required to complete all schoolwork from home because he was not allowed to return to school without cutting his locs.  While De'Andre was forced to study from home, he was denied access to qualified teachers, an interactive learning environment, educational resources, and instructive teaching.  De'Andre could not obtain class assignments and homework

after the last revision to the hair policy forced him out of school.  As a result of BHISD's actions, De'Andre's emotional health suffered.

75.     Since being prohibited from attending school unless he cut his locs, De'Andre has experienced extreme isolation, stress and depression.  In addition, De'Andre missed many senior year activities, such as Senior Panoramic, BHISD's Career Fair, college pre-counseling opportunities, and college recruiting events.

76.     De'Andre reluctantly transferred from BHISD to Ross S. Sterling High School in Goose Creek Consolidated Independent School District because he was not allowed to attend regular classroom instruction at Barbers Hill High School without cutting his hair.  De'Andre intends to return to and graduate from BHISD if the hair policy is changed or if he is permitted to return to school without submitting to BHISD's discriminatory hair length policy during the pending challenge to its legality.

**C.     BHISD's Constructive Expulsion of K.B.**

77.     K.B. started attending school in BHISD in August 2010 as a first-grade student.

78.     In 2017, K.B. formed his natural hair into locs.  K.B. decided to grow locs as an outward expression of his Black culture and to pay homage to his family's heritage.

79.     In August 2018, K.B. started as a freshman at Barbers Hill High School.  When he started high school, his locs had grown past his earlobes.  At the time, BHISD's hair policy stated in relevant part that, "[b]oys' hair will not extend, *at any time,* below the eyebrows, below the earlobes, or below the top of a t-shirt collar.  Corn rows and/or dread locks are permitted if they meet the aforementioned lengths." (emphasis added).  To comply with BHISD's hair policy— which expressly permitted locs if they did not extend below the student's earlobes, eyebrows, or shirt collar—K.B. began wearing a headband and tying his locs up and back.

80.     Although K.B. wore his hair off his collar and above his eyebrows and earlobes, school officials routinely approached K.B. concerning the need to keep his hair up, even at after-school events like football games and band practice.

81.     During the 2018–2019 academic year, K.B. was called out of class approximately once per week by Assistant Principal Ryan Rodriguez to determine whether K.B.'s hair followed the hair length policy.  K.B. was typically called down to the office in the middle of the last period of the day, right before he was about to go home.  AP Rodriguez regularly called K.B.'s mother, Ms. Bradford, to warn her that K.B. must comply with the hair policy.

82.     On August 15, 2019, K.B. started his sophomore year at Barbers Hill High School. Throughout the Fall semester of the 2019–2020 academic year, Assistant Principal Doug Anderson continued to regularly call K.B. out of class to check K.B.'s hair for compliance with the hair policy.  After these disruptions, K.B. was allowed to return to class because his hair was tied up and back to not extend past his earlobes, eyebrows, or t-shirt collar, in compliance with the hair policy.

83.     During K.B.'s freshman and sophomore year, upon information and belief, no female or non-Black students were similarly monitored or stalked by BHISD personnel concerning compliance with BHISD's hair policy.

84.     On December 17, 2019, K.B. learned that BHISD's new hair policy would be strictly enforced after students returned from Winter break in January 2020.  Principal Kana stated that if K.B. was not in compliance with the new hair policy upon his return from Winter break, he would be sent to ISS or an alternative school.  Principal Kana advised K.B. and his mother, Ms. Bradford, to braid his locs into cornrows and wear them up to comply with the new policy.

85.     In January 2020, Principal Kana asked K.B. to send him a picture of his hair down to ensure it complied with the new hair policy.  Principal Kana advised that if K.B.'s hair was too long, he would have to go to ISS and would be barred from attending all school-related activities, including sporting events and band.

86.     Upon information and belief, no female or non-Black students were targeted in this manner and specifically asked to send photographs of their hair *prior* to entry into Barbers Hill High School.

87.     K.B. did not immediately return to school when classes resumed after Winter break on January 6, 2020 because he did not have an opportunity to style his hair into cornrows as Principal Kana recommended.  When she was able to incur the expense, Ms. Bradford spent $70 for a hairstylist to braid K.B.'s hair into cornrows to comply with BHISD's new policy.

88.     After braiding his hair into cornrows, K.B. returned to school on January 14, 2020, with his cousin, De'Andre, and his aunt, Mrs. Arnold.  However, despite following the instructions of Principal Kana concerning how to comply with the new hair policy, Principal Kana would not allow K.B. to return to class until his hair was cut.  Mrs. Arnold then took K.B. home.  K.B. was devastated.

89.     On the evening of January 14, 2020, after K.B. returned home, Ms. Bradford called Principal Kana to ask about their previous conversation in which Principal Kana instructed K.B. and Ms. Bradford on how to style K.B.'s hair so that it would remain in compliance with the new hair policy.  Principal Kana acknowledged that he told K.B. and Ms. Bradford that braiding K.B.'s hair into cornrows would be permissible under the new hair policy.  However, Principal Kana stated there was nothing he could do about BHISD's enforcement of the new hair policy because

his boss, Superintendent Poole, wanted the policy strictly enforced against him and his cousin.  As a result, K.B.'s braided hairstyle would not be acceptable.

90.     K.B. did not return to school for nearly three weeks because of BHISD's discriminatory policy.  When K.B. was out of school, Ms. Bradford received homework packets from Barbers Hill High School for K.B. to complete.  The homework packets did not contain instructions, and K.B. was not given any guidance on the subject of the homework or what happened during in-class instruction.  The homework was difficult for K.B. to complete without the instruction afforded other students in class, and K.B. did not understand most of the assignments.

91.     On January 29, 2020, K.B. returned to school because Ms. Bradford was worried K.B. would face truancy and grade retention issues if he accrued additional absences.  K.B. was immediately sent to ISS when he returned to campus because of his locs.

92.     At ISS, K.B. was confined to a room for the duration of the day, where he was expected to complete homework without instruction from his regular teachers or from the ISS monitors, who themselves did not understand K.B.'s assignments. In addition, K.B. could not interact with other students, talk, or leave the classroom without permission, and he had to eat lunch at his desk.

93.     K.B was denied access to qualified teachers, an interactive learning environment, educational resources, and instructive teaching.  K.B. was also prohibited from participating in any of the extracurricular activities he typically took part in, including band.

94.     K.B.'s time in ISS took a significant emotional toll on him.  As a result of being placed in ISS, K.B. felt extremely isolated; he could not see his friends and was forced to study alone in a small room, which he describes felt like a prison.  As a result, K.B. lost his appetite and

interest in activities he enjoyed.  K.B.'s grades, confidence, and friendships suffered.  He also experienced extreme isolation, stress, and depression.

95.     From February 6, 2020 until February 21, 2020, K.B. stayed home from school to avoid being placed in ISS.  Ms. Bradford picked up homework for K.B. from school each day. K.B. did not receive any additional instruction during this period.

96.     On February 21, 2020, after BHISD continuously insisted that K.B. be placed in ISS unless he cut his locs, Ms. Bradford transferred K.B. to Ross S. Sterling High School in neighboring Goose Creek Consolidated Independent School District.  K.B. intends to return to BHISD if the hair policy is changed.

**D.     BHISD's Retaliation Against Mrs. Arnold's Exercise of Free Speech**

97.     Shortly after the August 2019 meeting between the Arnolds, Principal Kana, and Ms. Malone, BHISD's Board announced it planned to change the hair length policy.  Pursuant to BHISD's 2019-2020 Student Handbook, changes to BHISD policies affecting student conduct are revised annually by the Board, and any mid-year changes to the Student Handbook are discussed and voted on at Board meetings.

98.     Based on BHISD's prior changes to, and selective enforcement of, the hair policy, Mrs. Arnold was concerned that any additional changes would disproportionately and adversely affect De'Andre, K.B., and other Black male students at BHISD.  On November 18, 2019, Mrs. Arnold attended a Board meeting to express her concerns about the impact of modifications to the hair length policy.  During the public forum portion of the meeting, Mrs. Arnold described how De'Andre and K.B. had been monitored and targeted because of their locs and described some of the negative comments De'Andre received because of his hair.  Mrs. Arnold stated that the policy was unfair for Black students, including De'Andre and K.B., and unfair for male students in general.

99.     At the November 18, 2019 meeting, BHISD Superintendent Poole refused to discuss the modifications to the policy and their potential impact on Black male students and male students generally.  Superintendent Poole told Mrs. Arnold that she would need to obtain approval from the Board to be added to the agenda and discuss the matter at any future meeting.

100.     On November 19, 2019, the day after the Board meeting, Mrs. Arnold called Superintendent Poole's office and spoke with Ms. Duree.  Ms. Duree told Mrs. Arnold that she only needed one Trustee to approve her agenda item and be added to the Board meeting agenda.

101.     Ms. Duree also informed Mrs. Arnold that she would need to receive approval from a Trustee a month in advance of the next Board meeting, which was scheduled for December 16, 2019, for Ms. Arnold's proposed agenda item to be discussed at the next Board meeting.  Ms. Duree's suggestion is inconsistent with District policy, which states, "the deadline for submitting items for inclusion on the agenda is the seventh calendar day before regular meetings and the third calendar day before special meetings."

102.     The following week, Mrs. Arnold attempted to call Superintendent Poole's office again to express her concerns about the suspected discriminatory nature of the hair policy. Sometimes Ms. Malone received Mrs. Arnold's call and refused to connect Mrs. Arnold with Superintendent Poole via telephone or to provide his email address.

103.     Mrs. Arnold followed up with Superintendent Poole's office several times over the ensuing two weeks following her initial call to Superintendent Poole's office.  Superintendent Poole never returned any of these calls from Mrs. Arnold.

104.     On one of these attempts, Mrs. Arnold connected with Ms. Malone, who told Mrs. Arnold that Superintendent Poole refused to follow up with Mrs. Arnold due to an ongoing investigation into the District's enforcement of the hair policy against a Native American student.

105.    Mrs. Arnold attended the BHISD Board meeting on December 16, 2019.  At the meeting, Ms. Malone presented the revised student hair policy to the Board, which states that "[m]ale students' hair will not extend, at any time, below the eyebrows, or below the ear lobes. Male students' hair must not extend below the top of a t-shirt collar *or be gathered or worn in a style that would allow the hair to extend below the top of a t-shirt collar, below the eyebrows, or below the ear lobes* <u>when let down</u>." (emphasis added).  The hair policy did not similarly regulate female students' unencumbered hair.

106.    Mrs. Arnold spoke during the public forum portion of this meeting and contended that the proposed hair policy—prohibiting long hair worn in any manner for male students—would unfairly target De'Andre, K.B., and other Black male students with natural styles, such as locs. Mrs. Arnold also publicly asserted that De'Andre's locs were culturally significant and connected to the family's Black and Trinidadian roots.  Mrs. Arnold also directly addressed Superintendent Poole's refusal to meet with her concerning the changes to the policy and his ignoring her calls to his office.

107.    On a motion by Trustee Erwin that was seconded by Trustee Davis, the Board voted 6-0 to approve the modified hair policy as presented by Ms. Malone.  The policy became effective on January 6, 2020.

108.    This was BHISD's third change to the hair policy in less than three years.  Other provisions governing students' hair were not changed.

109.    Immediately after the December 16, 2019 meeting, Superintendent Poole approached and reprimanded Mrs. Arnold for publicly commenting on her inability to contact him. Superintendent Poole told Mrs. Arnold "that is not the way I run my meetings."  Superintendent Poole also said that Mrs. Arnold should not have made those allegations in front of his colleagues.

Superintendent Poole was very close to Mrs. Arnold's body, used a raised tone, and pointed at her in a threatening manner when making these statements.

110.    On December 17, 2019, Principal Kana called Mrs. Arnold and Ms. Bradford. Principal Kana said that BHISD's new hair policy would be strictly enforced after students returned from Winter break in January 2020.  Principal Kana further stated that if De'Andre and K.B. were not in compliance with the new hair policy upon their return from Winter break, they would be sent to ISS or an alternative school.

111.    Mrs. Arnold accompanied her son, De'Andre, and nephew, K.B., when they went to school on January 14, 2020.  Mrs. Arnold attempted to speak with BHISD administrators about the discriminatory nature of the hair policy.  Ms. Duree told Mrs. Arnold that she would have to present her complaints at a District Board meeting, and Ms. Duree told her again that she would need the approval of at least one Board member to be added to a meeting's agenda.

112.    BHISD denied De'Andre's and K.B.'s attempts to return to the classroom without cutting their natural locs.

113.    From January 14 to 16, 2020, Mrs. Arnold emailed BHISD Trustees Fred Skinner, Eric Davis, Becky Tice, George Barrera, Benny May, and Clint Pipes, asking to be added to the January 20, 2020 District Board meeting agenda.  Mr. Skinner replied on January 19, 2020, stating that he could not accommodate Mrs. Arnold's request and that the hair policy would remain unchanged.  Mrs. Arnold sent at least two emails to each Board member; the rejection from Mr. Skinner is the only response she received.

114.    On January 20, 2020, Mrs. Arnold attended the District board meeting.  She described the harm the hair policy caused De'Andre and K.B., and how the policy was being unfairly enforced against them.  No one from the Board offered any justification for the hair policy

or any response to Mrs. Arnold's explanation of its discriminatory enforcement against De'Andre or K.B.

**E.      BHISD's Exemption and Grievance Proceedings**

115.     BHISD maintains a dress code exemption process which purports to allow students to request an exemption to the dress and grooming code.  The principal may grant an exemption to any of the policy's provisions if a student has a physical or medical condition rendering compliance with the provision detrimental to the student's physical health, or if a student requests a religious exemption.

116.     On January 23, 2020, Ms. Bradford completed a dress code exemption request on behalf of K.B; the District received K.B.'s exemption request on January 27, 2020.  De'Andre also requested an exemption from the hair policy on January 21, 2020, citing his Trinidadian heritage and cultural significance of his hair; the District received De'Andre's exemption request on January 27, 2020.

117.     BHISD did not immediately respond to either exemption request.

118.     On January 27, 2020, De'Andre and K.B. filed administrative grievances with BHISD per the District's local policy.

119.     On February 7, 2020, BHISD declined to consider De'Andre's and K.B.'s exemption requests, opting instead to tie the exemption request into the grievance proceeding.

120.     In their respective grievances, De'Andre and K.B. contended that BHISD's hair policy discriminatorily enforced against them and that, on its face, the policy discriminated based on sex.  De'Andre and K.B. requested to return to regular instruction without penalty; that De'Andre be allowed to participate in commencement activities; and that BHISD amend its hair policy to eliminate its discriminatory provisions.

121.    On February 18, 2020, Principal Kana sent a response to De'Andre's grievance complaint.  Principal Kana's response stated, in relevant part, that De'Andre would be placed in ISS and would not be allowed to participate in graduation ceremonies if he did not cut his hair to comply with the new hair policy.  The letter also stated that the hair policy would not change in response to the Arnolds' request.

122.    On February 8, 2020, De'Andre and K.B. appealed the preliminary grievance determination and requested a Level II hearing and determination before Superintendent Poole or a proxy.

123.    De'Andre's and K.B.'s second hearings were initially scheduled for March 20, 2020.  However, these in-person hearings were cancelled due to the COVID-19 pandemic and rescheduled on May 5, 2020, to June 4, 2020—after the end of BHISD's school year and projected date of commencement activities.

124.    As a result of the continued delay to their grievance process, De'Andre, Mrs. Arnold and K.B. sent a letter to BHISD dated May 4, 2020, demanding (a) immediate and unconditional re-admission of De'Andre and K.B. into BHISD, and (b) that BHISD rescind the hair policy.[14]  BHISD responded to the demand letter on May 14, 2020, stating that (a) De'Andre and K.B. would not be allowed to return to school without cutting their locs, and (b) the hair length policy would not be rescinded.

**F.    Plaintiffs' Psychological Harm and Mental Anguish**

125.    De'Andre and K.B. both have suffered, and will continue to suffer, humiliation and emotional distress as a direct result of Defendants' unlawful monitoring, targeting, and constructive expulsion of the students.

---

[14] A true and correct copy of the letter dated May 4, 2020 (redacted to remove minor K.B.'s name) is attached as Exhibit A and incorporated by reference as if fully set forth herein.

126.     Over the past seven years of monitoring and targeting, Defendants' actions have made De'Andre and K.B. feel unwelcome, inferior, and ostracized.  In addition, De'Andre and K.B. were effectively expelled when they were forced to leave school because of the hostile and inhospitable environment created by Defendants.

127.     Since their constructive expulsion, De'Andre and K.B. have exhibited despondent behavior symptomatic of trauma and depression, such as loss of appetite, withdrawal, and excessive fatigue throughout the day.

128.     Mrs. Arnold has also suffered, and continues to suffer, significant emotional harm and mental anguish as a direct result of the actions Defendants took in response to her complaints about the discriminatory hair policy.  Defendants' retaliatory conduct, such as stigmatizing, humiliating, and constructively expelling her son before he graduated high school, caused severe harmful effects to Mrs. Arnold's daily life resulting in emotional distress and other adverse mental health conditions.  Defendants' actions and the foreseeable consequences to such actions have caused, and continue to cause, Mrs. Arnold to live in constant anxiety and fear about De'Andre's safety, future, and emotional wellbeing.

129.     As of the filing of this complaint, De'Andre, K.B. and Mrs. Arnold continue to exhibit signs of trauma directly related to Defendants' conduct.

## FIRST CAUSE OF ACTION

**Violation of the Fourteenth Amendment's Equal Protection Clause
Pursuant to 42 U.S.C. § 1983
(Intentional Race Discrimination)**

130.     De'Andre and K.B. bring this Fourteenth Amendment race discrimination claim against BHISD, the Board of Trustees, and all individual defendants in their individual and official capacities, for the discriminatory construction and selective enforcement of BHISD's hair policy against De'Andre and K.B.

131.     Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

132.     The Equal Protection Clause of the Fourteenth Amendment prohibits States from denying, "any person within its jurisdiction the equal protection of the laws."  This direction requires all similarly situated persons to be treated alike.  *Plyler v. Doe*, 457 U.S. 202, 210 (1982) (quoting U.S. Const. amend. XIV, § 1).

133.     Prohibited racial discrimination includes reliance on racial prejudice or stereotypes. *See, e.g., Batson v. Kentucky*, 476 U.S. 79, 104 (1986).

134.     A school's use of race or ethnicity that is in any way motivated by prejudice or stereotype against a group constitutes intentional discrimination and violates the Equal Protection Clause of the Fourteenth Amendment.

135.     Furthermore, treating similarly situated students differently because of "ethnic hair" constitutes discrimination in violation of the Equal Protection Clause.  *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 415 (5th Cir. 2015); *Hollins v. Atlantic Co.,* 188 F.3d 652, 661-62 (6th Cir. 1999).

136.     "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977).

137.     Pursuant to BHISD's Board Policy Manual and Student Code of Conduct, Superintendent Poole and the BHISD Board possess final authority to establish standards and policy with respect to student dress and grooming.

138.    BHISD's Board, as the official policymaker for the school district, adopted a series of hair policies that targeted De'Andre and K.B. and their natural hair growth, making it increasingly difficult and ultimately impossible for them to comply with the dress code.

139.    BHISD and the individual defendants monitored De'Andre and K.B. and, with discriminatory intent to force them to conform to racially discriminatory views of "excellence," "cleanliness," and "professionalism," and to reflect the District's discriminatory perception of "high standards," adopted a facially race-neutral hair policy that is motivated, at least in part, by the racially discriminatory goal of restricting Black students from wearing their natural hair or culturally significant hair formations.

140.    Ms. Duree repeatedly entered De'Andre's classroom during regular instruction to monitor him and used her observations to modify the discriminatory hair policy.  Other non-Black students were not similarly observed in the classroom for their hair.

141.    AP Rodriguez, AP Anderson, and Mr. Tillis frequently monitored De'Andre and K.B. during school hours and removed them from learning spaces to evaluate their hair, even when De'Andre and K.B. followed the hair policy.  Other non-Black students were not similarly targeted, surveilled, or removed from learning spaces for hair evaluations.

142.    Principal Kana required De'Andre and K.B. to submit photos of their hair before returning to school in January 2020.  Other non-Black students were not similarly required to submit photos of their hair to administrators in order to receive an education.

143.    In defending its hair policy, BHISD has repeatedly alleged that "high expectations for academic instruction" are related to how De'Andre and K.B. wear their hair. BHISD insinuates that natural Black hair or culturally significant locs are unprofessional and linked to

bad performance or low expectations.  This presumption is based on racial stereotypes about natural Black hair, such as locs.

144.    Superintendent Poole also indicated that De'Andre's locs fall short of the "high expectations" BHISD students are expected to exemplify in an op-ed he submitted to the Baytown Sun, a local newspaper.  His assumptions were based on racially discriminatory stereotypes that natural Black hair has a negative impact on educational standards in ways that non-Black hair does not.

145.    BHISD's hair policy was constructed in direct response to De'Andre's and K.B.'s hair journey and based on negative stereotypes about Black hair in its natural state of locs, constituting discrimination based on race.

146.    Each modification closely followed actions De'Andre and K.B. took to be in compliance with the policy and avoid disciplinary action.  Yet, BHISD did not provide another justification for the multiple changes to the policy.

147.    Additionally, BHISD's current hair policy is wholly arbitrary because it seeks to not only regulate the students' hair as it is worn at school, but also to regulate students' hair as it hypothetically could be worn "when let down"—even off of school premises.

148.    BHISD has no legitimate bases or concerns to regulate De'Andre's, K.B.'s, or any other student's hair as it could be worn "when let down," especially if the hair is not worn in such a manner at school or extracurricular events.

149.    By acting under color of state law to deprive Plaintiffs of their Fourteenth Amendment rights, Defendants have violated 42 U.S.C. § 1983.

150.    As a direct and proximate result of Defendants' discriminatory construction and selective enforcement of BHISD's hair policy, De'Andre and K.B. have suffered and will continue

to suffer compensable harm, including violations of their Fourteenth Amendment rights, humiliation, and emotional distress, and are entitled to declaratory relief announcing that BHISD's hair policy violates federal law, an order enjoining Defendants from enforcing its hair policy, an order expunging any disciplinary sanctions on Plaintiffs' school records, damages, costs, and attorneys' fees.

## SECOND CAUSE OF ACTION

### Violation of Title VI
### Pursuant to 42 U.S.C. § 1983
### (Intentional Discrimination)

151.    De'Andre and K.B. bring this Title VI race discrimination claim against BHISD for the discriminatory construction and selective enforcement of its hair policy against De'Andre and K.B.

152.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

153.    Title VI of the Civil Rights Act of 1964 provides that recipients of federal financial assistance may not discriminate based on race, color, or national origin.   42 U.S.C. § 2000d.

154.    BHISD is a federally funded program or activity under 42 U.S.C. § 2000d.  BHISD receives $331 per student in federal funding each fiscal year.

155.    As a recipient of federal financial assistance, BHISD and all its programs and activities are subject to Title VI of the Civil Rights Act of 1964.

156.    Like the Fourteenth Amendment's Equal Protection Clause, Title VI bars intentional discrimination.  *See Alexander v. Choate*, 469 U.S. 287, 292-93 (1985); *Guardians Ass'n v. Civil Serv. Comm'n*, 463 U.S. 582, 607-08 (1983);*Hollins*, 188 F.3d at 661-62. A recipient's use of race or ethnicity that is in any way motivated by prejudice or stereotype against

a particular group therefore violates both the Fourteenth Amendment and Title VI.  28 C.F.R. § 42.104(b).

157.    De'Andre and K.B. were both subject to the discriminatory enforcement of BHISD's hair policy based on their race and color.

158.    Ms. Malone repeatedly entered De'Andre's classroom during regular instruction to monitor him and used her observations to modify the discriminatory hair policy.  Other non-Black students were not similarly observed in the classroom for their hair.

159.    AP Rodriguez frequently monitored De'Andre and K.B. during school hours and removed them from learning spaces to evaluate their hair, even when De'Andre and K.B. followed the hair policy.  Other non-Black students were not similarly targeted, surveilled, or removed from learning spaces for hair evaluations.

160.    Principal Kana required De'Andre and K.B. to submit photos of their hair before returning to school in January 2020.  Other non-Black students were not similarly required to submit photos of their hair to administrators in order to receive an education.

161.    Before BHISD adopted the current iteration of the hair policy, BHISD strictly enforced the hair policy against De'Andre and K.B. without similarly enforcing the policy against white male students.

162.    De'Andre and K.B. were told by Principal Kana that they were following the hair policy in place at the start of the 2019-2020 school year, but they were later penalized for following Principal Kana's instruction.

163.    BHISD adopted the current hair policy to push De'Andre and K.B. out of compliance with the policy and force them to cut their culturally significant locs.

164.     Additionally, BHISD's current hair policy is wholly arbitrary because it seeks to not only regulate the students' hair as it is worn at school, but also regulate the students' hair as it hypothetically could be worn "when let down," including outside of school.

165.     BHISD has no legitimate bases or concerns that allow it to exercise the authority to regulate De'Andre's, K.B.'s, or any other student's hair as it could be worn "when let down," especially when their hair is not worn in such a manner at school or extracurricular events.

166.     BHISD monitored and enforced the current hair policy against De'Andre and K.B. and did not similarly monitor and enforce such policy against white male students during the same time. Moreover, at least one male student with long hair attending Barbers Hill High School with De'Andre and K.B. has alleged that BHISD did not start enforcing the hair policy against him or other students until De'Andre became "a problem," *i.e.* BHISD's discriminatory enforcement of the hair policy against De'Andre became publicized and the focus of attention.[15]

167.     BHISD's discriminatory construction and selective enforcement of its hair policy constitute a violation of Title VI.

168.     As a direct and proximate result of BHISD's discriminatory construction and selective enforcement of its hair policy, De'Andre and K.B. have suffered and will continue to suffer compensable harm, including humiliation, emotional distress, violations of their civil rights, and are entitled to declaratory relief announcing that BHISD's hair policy violates federal law, an order enjoining Defendants from enforcing its hair policy, an order enjoining Defendants from discriminatorily enforcing BHISD's hair policies, an order expunging any disciplinary sanctions on Plaintiffs' school records, costs, and attorneys' fees.

---

[15] Keith Garvin and Tierra Smith, *More Barbers Hill students angered by school dress code, forced to cut their hair as well*, KPRC HOUSTON (Jan. 24, 2020, 9:28 P.M.), https://www.click2houston.com/news/local/2020/01/24/more-barbers-hill-students-angered-by-school-dress-code-forced-to-cut-their-hair-as-well/.

## THIRD CAUSE OF ACTION

**Violation of the Fourteenth Amendment's Equal Protection Clause
Pursuant to 42 U.S.C. § 1983
(Sex Discrimination)**

169.    De'Andre and K.B. bring this Fourteenth Amendment sex discrimination claim against BHISD, the Board of Trustees, and all other individual defendants in their individual and official capacities, for the discriminatory construction and enforcement of BHISD's hair policy against De'Andre and K.B.

170.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

171.    The Constitution prohibits sex classifications based on "overbroad generalizations about the different talents, capacities, or preferences of males and females."  *United States v. Virginia*, 518 U.S. 515, 533 (1996); *Miss. Univ. for Women v. Hogan*, 458 U.S. 718 (1982) (invalidating school's policy that perpetuates a stereotyped view of proper roles of men and women).

172.    Any policy or rule that discriminates on the basis of gender must undergo, and pass muster under, an intermediate scrutiny analysis.  *Craig v. Boren*, 429 U.S. 190, 197 (1976).

173.    BHISD's hair policy on its face regulates male students' hair length but does not similarly regulate female students' hair length.  Male students' violations can result in male students' exclusion from participation in a traditional academic setting and other educational extracurricular activities.

174.    BHISD's hair policy concerning length is expressly limited to males; BHISD does not have a similar restriction for female students.

36

175.     Applying a hair-length restriction only to male students constitutes illegal sex classification because such policy is impermissibly based on the stereotype that men must have short hair and only females have long hair.

176.     BHISD's hair-length restriction does not further an important government interest because it has no legitimate, important, and substantial reason to permit female students to wear their hair long when male students are not so permitted.

177.     The policy is not reasonably related to traditional aims underlying similar regulations, such as teaching hygiene, preventing disruption, or avoiding safety hazards. Instead, BHISD's restriction is wholly arbitrary.

178.     Further, Defendants have attempted to force De'Andre and K.B. to conform to sex-based stereotypes (BHISD's perception of an acceptable hair length for *male* students), as well as race-based stereotypes (BHISD's perception of an acceptable hair formation for *Black* students).

179.     To bisect De'Andre's and K.B.'s identities as Black and male, BHISD has subjected them to an intersectional harm based on a combination of race and sex.  De'Andre's and K.B.'s identities as Black male students create a compounded burden not experienced by other students at BHISD.

180.     The hair policy facially discriminates based on sex.  And, as applied, targets Black male students with culturally significant locs.

181.     BHISD thus subjects male and female students to different standards of dress and grooming based on outdated sex stereotypes, in violation of the Equal Protection Clause.

182.     As a direct and proximate result of Defendants' discriminatory construction and enforcement of BHISD's hair policy, De'Andre and K.B. have suffered and will continue to suffer compensable harm, including humiliation, emotional distress, and violations of their statutory

rights, and are entitled to declaratory relief announcing that BHISD's hair policy violates federal law, an order enjoining Defendants from enforcing its hair policy, an order enjoining Defendants from discriminatorily enforcing BHISD's hair policies, an order expunging any disciplinary sanctions on Plaintiffs' school records, damages, costs, and attorneys' fees.

## FOURTH CAUSE OF ACTION

### Violation of Title IX
### Pursuant to 42 U.S.C. § 1983
### (Sex Discrimination)

183.    De'Andre and K.B. bring this Title IX sex discrimination claim against BHISD for the discriminatory construction and enforcement of its hair policy against De'Andre and K.B.

184.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

185.    Title IX states that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a).

186.    Like the Fourteenth Amendment's Equal Protection Clause, a plaintiff bringing a claim under Title IX may use either direct or circumstantial evidence of intentional discrimination. *Cf. Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994).

187.    BHISD's hair policy on its face regulates male students' hair length but does not similarly regulate female students' hair length.  Violations of the hair length requirement by male students can result in the students' exclusion from participation in a traditional academic setting and other educational extracurricular activities.

188.    BHISD's hair policy concerning length is expressly limited to males; BHISD does not have a similar restriction for female students.

189.    Applying a hair-length restriction only to male students constitutes illegal sex classification because such policy is impermissibly based on the stereotype that men must have short hair and only females have long hair.

190.    BHISD hair-length restriction is wholly arbitrary because it has no legitimate, important, and substantial reason to permit female students to wear their hair long when male students are not so permitted.

191.    Further, BHISD has attempted to force De'Andre and K.B. to conform to sex-based stereotypes (BHISD's perception of an acceptable hair length for *male* students), as well as race-based stereotypes (BHISD's perception of an acceptable hair formation for *Black* students).

192.    The hair policy facially discriminates based on sex.  And, as applied, targets Black male students with culturally significant locs.

193.    BHISD thus subjects male and female students to different standards of dress and grooming based on outdated sex stereotypes, in violation of Title IX.

194.    As a direct and proximate result of BHISD's discriminatory construction and enforcement of its hair policy, De'Andre and K.B. have suffered and will continue to suffer compensable harm, including humiliation, emotional distress, and violations of their statutory rights, and are entitled to declaratory relief announcing that BHISD's hair policy violates federal law, an order enjoining Defendants from enforcing its hair policy, an order enjoining Defendants from discriminatorily enforcing BHISD's hair policies, an order expunging any disciplinary sanctions on Plaintiffs' school records, costs, and attorneys' fees.

## FIFTH CAUSE OF ACTION

### Violation of the First Amendment
### Pursuant to 42 U.S.C. § 1983
### (Freedom of Expression)

195.    De'Andre and K.B. bring this First Amendment free expression claim against BHISD, the Board of Trustees, and all other individual defendants in their individual and official capacities, for their infringement on De'Andre's and K.B.'s First Amendment right to express themselves freely without repercussions from the government.

196.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

197.    The First Amendment prohibits the abridgment of speech.  The general right to freedom of expression applies to conduct revealing an intent to convey a particularized message, and the likelihood that the message would be understood by those exposed to it. *Texas  Johnson*, 491 U.S. 397, 404 (1989); *Canady v. Bossier Par. Sch. Bd*., 240 F.3d 437, 440 (5th Cir. 2001). Pursuant to the Fourteenth Amendment, the prohibition extends to rules imposed by state-authorized actors, such as public school districts. *See* U.S. Const. amend. XIV.

198.    De'Andre and K.B. wear their natural hair in locs as a sign of their heritage, identity, and ethnicity—a symbol widely understood as a Black hairstyle connected to Black identity and heritage.

199.    De'Andre's locs are representative of his Black and West Indian culture and are worn by De'Andre as a symbol of such cultures and kinship with his family.

200.    K.B.'s locs are similarly a symbolic expression of his Black culture and connection to his Black community.

201.    De'Andre and K.B. wear their locs to the natural length to communicate their affinity with their cultural and family backgrounds.

202.    These communicative hairstyles do not impinge upon the rights of other students and do not interfere with any educational motive.  Yet, the Board has repeatedly targeted and made changes to BHISD's official hair policy to ensure that the only way De'Andre and K.B. could comply was by cutting off their locs altogether.

203.    The disciplinary actions that BHISD, the Board of Trustees, and the individual Defendants have enforced, and continue to enforce, on De'Andre and K.B. for expressing their culture, heritage, and background through hairstyle are unconstitutional infringements on both students' First Amendment right to free speech.  De'Andre's and K.B.'s right to freely express their heritage by wearing culturally significant locs in a non-distracting or offensive manner is clearly established.

204.    As a direct and proximate result of Defendants' infringement on De'Andre's and K.B.'s First Amendment right to express themselves, De'Andre and K.B. have suffered and will continue to suffer compensable harm, including humiliation, emotional distress, and violations of their constitutional rights, and are entitled to declaratory relief announcing that BHISD's hair policy violates federal law, an order enjoining Defendants from enforcing its hair policy, an order expunging any disciplinary sanctions on Plaintiffs' school records, damages, costs, and attorneys' fees.

## SIXTH CAUSE OF ACTION

### Violation of the First Amendment
### Pursuant to 42 U.S.C. § 1983
### (Retaliation)

205.    Mrs. Arnold brings this First Amendment retaliation claim against BHISD, the Board of Trustees, and all other individual defendants in their individual and official capacities.

206.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

207.    The First Amendment guarantees that "Congress shall make no law . . . abridging the freedom of speech."  U.S. Const. amend. I.  Pursuant to the Fourteenth Amendment, the prohibition extends to rules imposed by state-authorized actors, such as public school districts. U.S. Const., amend. XIV.

208.    Mrs. Arnold engaged in constitutionally protected speech when she criticized the official BHISD hair policy promulgated by the Board and Superintendent Poole's failure to acknowledge her grievances regarding this policy at the BHISD Board meeting.

209.    Shortly after Mrs. Arnold spoke at the Board meeting, she was informed by Principal Kana that Superintendent Poole demanded strict enforcement of the policy against Mrs. Arnold's family members, De'Andre and K.B.

210.    BHISD's exclusion of De'Andre and K.B. from regular instruction and assignment of K.B. to ISS are actions that would chill an ordinary person from continuing to voice concerns about BHISD's discriminatory hair policy.

211.    The adverse actions of the District and its officials were substantially motivated by Mrs. Arnold's constitutionally protected speech.  Superintendent Poole made this clear when he

42

reprimanded Mrs. Arnold. Shortly after such reprimand, BHISD forced De'Andre and K.B. to either cut their hair or be sent to ISS.

212. Defendants retaliatory enforcement of BHISD's hair policy constitute a violation of the First Amendment of the United States Constitution.

213. As a direct and proximate result of Defendants' retaliatory enforcement of BHISD's hair policy, Mrs. Arnold has suffered and will continue to suffer compensable harm, including humiliation, emotional distress, and violations of her constitutional rights, and is entitled to an order enjoining Defendants from retaliating against students' parents for critiquing school policies, damages, costs, and attorneys' fees.

## SEVENTH CAUSE OF ACTION

### Violation of Title VI
### Pursuant to 42 U.S.C. § 1983
### (Retaliation)

214. Mrs. Arnold brings this Title VI retaliation claim against BHISD for enforcing its hair policy against De'Andre and K.B. after she made complaints against the hair policy.

215. Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

216. "Title VI prohibits retaliation for exercising a right protected by that title, such as complaining about discriminatory behavior." *Vouchides v. Houston Community College System*, No. H-10-2559, 2011 WL 4592057, at *7 (S.D. Tex. Sep. 30, 2011).

217. At the BHISD Board meeting, Mrs. Arnold made a verbal complaint about the likely discriminatory effect of the District's modified hair policy on Black and male students, including her son De'Andre and nephew K.B.

218. Mrs. Arnold had a good faith belief that the District's actions were discriminatory.

219.    Mrs. Arnold's complaints were made at a public-school Board meeting with Superintendent Poole and other Trustees present.  After Mrs. Arnold expressed her concerns and complaints, Superintendent Poole reprimanded her for her public statements.

220.    Shortly after Mrs. Arnold's complaints, BHISD removed De'Andre and K.B. from school activities and substantive classroom instruction.  BHISD was aware of Mrs. Arnold's complaints and based its decision to selectively enforce the hair policy against De'Andre and K.B., at least in part, on Mrs. Arnold's complaints.

221.    BHISD's retaliatory enforcement of its hair policy constitute a violation of Title VI under color of state law.

222.    As a direct and proximate result of BHISD's retaliatory enforcement of its hair policy, Mrs. Arnold has suffered and will continue to suffer compensable harm, including humiliation, emotional distress, and violations of her statutory rights, and is entitled to an order enjoining Defendants from retaliating against students' parents for critiquing school policies, damages, costs, and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### Violation of Title IX
### Pursuant to 42 U.S.C. § 1983
### (Retaliation)

223.    Mrs. Arnold brings this Title IX retaliation claim against BHISD for enforcing its hair policy against De'Andre and KB after she made complaints against the hair policy.

224.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

225.    Title IX similarly prohibits retaliation for exercising a right protected by that title, such as complaining about discriminatory behavior.

226.     At the BHISD Board meeting, Mrs. Arnold made a verbal complaint about the likely discriminatory effect of the District's modified hair policy on Black and male students, including her son De'Andre and nephew K.B.

227.     Mrs. Arnold had a good faith belief that the District's actions were discriminatory.

228.     Mrs. Arnold's complaints were made at a public-school Board meeting with Superintendent Poole and other school Trustees present.   After Mrs. Arnold offered her complaints, Superintendent Poole reprimanded her for her public statements.

229.     Shortly after Mrs. Arnold's complaints, BHISD removed De'Andre and K.B. from school activities and substantive classroom instruction.   BHISD was aware of Mrs. Arnold's complaints and based its decision to selectively enforce the hair policy against De'Andre and K.B., at least in part, on Mrs. Arnold's complaints.

230.     BHISD's retaliatory enforcement of its hair policy constitute a violation of Title IX under color of state law.

231.     As a direct and proximate result of BHISD's retaliatory enforcement of its hair policy, Mrs. Arnold has suffered and will continue to suffer compensable harm, including humiliation, emotional distress, and violations of her statutory rights, and is entitled to an order enjoining Defendants from retaliating against students' parents for critiquing school policies, damages, costs, and attorneys' fees.

## NINTH CAUSE OF ACTION

**Violation of Texas Civil Practice and Remedies Code § 106.001**
**(Intentional Race Discrimination)**

232.     De'Andre and K.B. bring this claim for race discrimination under Texas Civil Practice and Remedies Code § 106.001 against BHISD, the Board of Trustees, and all other

individual defendants in their individual and official capacities, for the discriminatory construction and selective enforcement of BHISD's hair policy against De'Andre and K.B.

233.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

234.    Texas law provides that an officer or employee of the state, or a political subdivision of the state, may not, because of a person's race or color: (1) refuse to permit the person to use facilities; (2) refuse to permit the person from participating in a program managed by the state or political subdivision; (3) refuse to grant a benefit to the person; or (4) impose an unreasonable burden on the person.  *See* Tex. Civ. Prac. & Rem. Code §§ 106.001(a)(3)–(6).

235.    De'Andre and K.B. were both subject to the discriminatory enforcement of BHISD's hair because of their race and color.  De'Andre and K.B. were denied state facilities, state-operated programs, and benefits by being forced to go to ISS due to their natural Black hair. Defendants' attempts to force De'Andre and K.B. to cut their natural Black hair and placing them in ISS imposed unreasonable burdens on the Plaintiffs.

236.    Before the Board promulgated the current iteration of the hair policy, BHISD and the individual defendants strictly monitored and enforced the dress and grooming policy against De'Andre and K.B. without similarly monitoring and enforcing such policy against white male students.

237.    BHISD adopted and enforced the current hair policy to push De'Andre and K.B. out of compliance and force them to cut off their natural Black locs.

238.    Defendants enforced the current hair policy against De'Andre and K.B. and did not similarly enforce such policy against white male students.

239.    Defendants' enforcement prevented De'Andre and K.B. from using state facilities and prevented them from enjoying state-operated programs, such as extracurricular activities and graduation, which are state-sponsored benefits.  Defendants' punishment for growing natural Black locs also imposed an unreasonable burden on the Plaintiffs by forcing them to either cut their locs or attend ISS and be sent to an alternative school.

240.    As a direct and proximate result of Defendants' discriminatory construction and enforcement of BHISD's hair policy, De'Andre and K.B. have suffered and will continue to suffer compensable harm, including humiliation, emotional distress, and violations of their statutory rights, and are entitled to declaratory relief announcing that BHISD's hair policy violates state law, an order enjoining Defendants from enforcing its hair policy, an order expunging any disciplinary sanctions on Plaintiffs' school records, damages, costs, and attorneys' fees.

### TENTH CAUSE OF ACTION

### Violation of Texas Civil Practice and Remedies Code § 106.001
### (Sex Discrimination)

241.    De'Andre and K.B. bring this claim for sex discrimination under Texas Civil Practice and Remedies Code § 106.001 against BHISD, the Board of Trustees, and all other individual defendants in their individual and official capacities, for the selective enforcement of BHISD's hair policy against De'Andre and K.B.

242.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

243.    Texas law provides that an officer or employee of the state, or a political subdivision of the state, may not, because of a person's sex: (1) refuse to permit the person to use facilities; (2) refuse to permit the person from participating in a program managed by the state or

47

political subdivision; (3) refuse to grant a benefit to the person; or (4) impose an unreasonable burden on the person.  *See* Tex. Civ. Prac. & Rem. Code §§ 106.001(a)(3)–(6).

244.    BHISD's hair policy on its face regulates male students' hair length but does not similarly regulate female students' hair length.  Male students' violations can result in male students' exclusion from state facilities, state-operated programs, and benefits.

245.    BHISD's hair policy concerning length is expressly limited to males; BHISD does not have a similar restriction for female students.  Applying a hair-length restriction only to male students constitutes illegal sex classification because such policy is impermissibly based on the stereotype that men must have short hair and only females have long hair.

246.    De'Andre and K.B. were also subjected to the discriminatory enforcement of BHISD's hair policy because of their sex.  De'Andre and K.B. were denied state facilities, state-operated programs, and benefits by being forced to go to ISS due to their sex and natural hairstyle. BHISD's attempts to force De'Andre and K.B. to cut their natural hair because of their sex and placing them in ISS imposed unreasonable burdens on the Plaintiffs.

247.    Before the Board promulgated the current iteration of the hair policy, BHISD and the individual defendants strictly monitored and enforced the hair policy against De'Andre and K.B. without similarly monitoring and enforcing such policy against female students.

248.    BHISD adopted the current hair policy to push De'Andre and K.B. out of compliance and force them to cut off their natural hair.

249.    Defendants enforced the current hair policy against De'Andre and K.B. and did not similarly enforce such policy against female students.

250.    Defendants' policy and enforcement prevented De'Andre and K.B. from using state facilities and prevented them from enjoying state-operated programs, such as extracurricular

activities and graduation, which are state-sponsored benefits.  BHISD's punishment against males for growing natural hair also imposed an unreasonable burden on the Plaintiffs by forcing them to either cut their locs or attend ISS.

251.    As a direct and proximate result of Defendants' discriminatory construction and enforcement of BHISD's hair policy, De'Andre and K.B. have suffered and will continue to suffer compensable harm, including humiliation, emotional distress, and violations of their statutory rights, and are entitled to declaratory relief announcing that BHISD's hair policy violates state law, an order enjoining Defendants from enforcing its hair policy, an order expunging any disciplinary sanctions on Plaintiffs' school records, damages, costs, and attorneys' fees.

### ELEVENTH CAUSE OF ACTION

**Declaratory Judgment**
**Pursuant to 28 U.S.C. §§ 2201 and 2202**

252.    Plaintiffs reallege and incorporate by reference all preceding and subsequent paragraphs as if fully set forth herein.

253.    Plaintiffs seek a declaratory judgment in their favor pursuant to 28 U.S.C. § 2201, finding and determining that the current BHISD hair policy:

    (1)    Discriminates based on race in violation of the Fourteenth Amendment right to equal protection;

    (2)    Discriminates based on race in violation of Title VI;

    (3)    Discriminates based on sex in violation of the Fourteenth Amendment right to equal protection;

    (4)    Discriminates based on sex in violation of Title IX;

    (5)    Violates the First Amendment right to free speech;

    (6)    Discriminates based on race in violation of Texas Civil Practice and Remedies Code § 106.001; and

(7)     Discriminates based on sex in violation of Texas Civil Practice and
Remedies Code § 106.001.

254.    Plaintiffs further seek a declaratory judgment pursuant to 28 U.S.C. § 2201 finding

and determining that Plaintiffs' rights will be irreparably harmed without injunctive or declaratory

relief from this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter the following relief:

1. Order immediate reinstatement of De'Andre and K.B. in Barbers Hill High School
   without being subjected to enforcement of BHISD's discriminatory hair policy to
   enable De'Andre to graduate from BHISD where he has matriculated since pre-school
   and K.B. to matriculate through BHISD where he attended school since first grade until
   his constructive expulsion as a result of the selective enforcement of BHISD's hair
   policy;

2. Judgment against the Defendants finding and declaring that the Defendants' actions
   violate Plaintiffs' rights, as protected by the Fourteenth Amendment and First
   Amendment to the Constitution of the United States, and other applicable federal and
   state statutes;

3. Order all appropriate injunctive relief as warranted, including but not limited to,
   ordering Defendants to rescind its hair policy and put in place policies and procedures
   to ensure that such discriminatory conduct does not recur;

4. Order all disciplinary sanctions stemming from BHISD's hair policy expunged from
   Plaintiffs' school records;

5. Award Plaintiffs compensatory damages in an amount to be determined at trial, plus
   pre- and post-judgment interest;

6. Award Plaintiffs nominal and punitive damages against all Defendants in an amount to
   be determined at trial, plus pre- and post-judgment interest;

7. Award Plaintiffs reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and 29
   U.S.C. § 794a; and

8. Grant such other and further relief to Plaintiffs as the Court deems just and equitable.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues of fact and damages stated herein.

DATED: May 22, 2020.

Respectfully Submitted,

  _/s/ Nicholas E. Petree __
Stephen Baldini (*pro hac vice* motion pending)
AKIN GUMP STRAUSS
HAUER & FELD LLP
One Bryant Park
Bank of America Tower
New York, NY 10036
Tel: (212) 872-1062
Fax: (212) 872-1002
sbaldini@akingump.com

Roxanne Tizravesh
Texas Bar No. 24091141
Southern District of Texas Bar No. 2618739
Michael Reeder
Texas Bar No. 24070481
Southern District of Texas Bar No. 1076650
Nicholas E. Petree (*attorney-in-charge)
Texas Bar No. 24083657
Southern District of Texas Bar No. 1778181
AKIN GUMP STRAUSS
HAUER & FELD LLP
1111 Louisiana Street, Ste. 44
Houston, Texas 77002
Tel: (713) 220-5800
Fax: (713) 236-0822
rtizravesh@akingump.com
mreeder@akingump.com
npetree@akingump.com

Janai Nelson  (*pro hac vice* motion pending)
Patricia Okonta  (*pro hac vice* motion pending)
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
40 Rector Street, 5th Floor
New York, New York 10006
Tel: (212) 965-2200
Fax: (212) 226-7592
jnelson@naacpldf.org
pokonta@naacpldf.org

51

Mahogane Reed (*pro hac vice* motion pending)
Texas Bar No. 24110259
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC
700 14th Street N.W., Ste. 600
Washington, D.C. 20005
Tel: (202) 682-1300
Fax: (202) 682-1312
mreed@naacpldf.org

**PRO BONO COUNSEL FOR PLAINTIFFS**