Case 4:20-cv-01802   Document 236   Filed on 11/29/22 in TXSD   Page 1 of 12

United States District Court
Southern District of Texas
**ENTERED**
November 29, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

EVERETT DE'ANDRE ARNOLD, *et al.*, §
　　　　　　　　　　　　　　　　　§
　　Plaintiffs, 　　　　　　　　　§
VS. 　　　　　　　　　　　　　　　§　　CIVIL ACTION NO. 4:20-CV-1802
　　　　　　　　　　　　　　　　　§
BARBERS HILL INDEPENDENT 　　　　§
SCHOOL DISTRICT, *et al.*, 　　　§
　　　　　　　　　　　　　　　　　§
　　Defendants. 　　　　　　　　　§

# **ORDER**

Pending before the Court are several discovery disputes. The Court rules on those disputes as follows:

　—*Barbers Hill's privilege log*

The Court has examined the documents submitted by Barbers Hill for *in camera* review. Based on the available information, Barbers Hill properly characterized as work product the materials set forth in the following lines of its privilege log: 7-8; 13-17; 19-31; 33-35; 38-59; 61-64. However, some of the emails described in those lines of the log relate to a study conducted by Dr. Christine Bruton, Barbers Hill's Coordinator of Assessment and Accountability. It appears that the Bruton study has been produced and is being used to justify Barbers Hill's hair policy. (Dkt. 211-5 at p. 16; Dkt. 211-6 at p. 8). Nevertheless, since Barbers Hill has represented that it will not designate Dr. Bruton as a testifying expert, the emails referencing Dr. Bruton's research are not discoverable at this time.

Line 9 of the privilege log lists an email from Angela Heffner to Mandy Malone that was sent on February 13, 2020. This email was actually sent by Angela Heffner to Tara

Pohorily. The Court concludes that the February 13, 2020 email and its attachments are not covered by the work product doctrine because it does not appear that the primary motivating purpose behind the creation of the email was to aid in possible future litigation. The email reads:

> Hi Tara,
>
> Thank you so much for revising your discipline. You went from 6 to 170 dress code offenses. Amazing! Please thank everyone for me.

Line 60 of the privilege log lists an email sent by Shelly Deakle to Douglas Anderson on August 3, 2021. The Court finds that this email is discoverable.

Lines 1 and 2 of Barbers Hill's privilege log withhold "all communications" between Sara Leon's law firm and Barbers Hill on the basis of attorney-client privilege. Barbers Hill contends that a categorical privilege log is appropriate because Barbers Hill "is not a corporation and does not have corporate counsel." (Dkt. 186 at p. 3). However, in a later filing, Barbers Hill describes Sara Leon's law firm as its "general counsel." (Dkt. 227 at p. 3). Based on the statements of Barbers Hill's counsel the Court finds that Sara Leon serves as general counsel for Barbers Hill and her communications with Barbers Hill is protected from discovery by the attorney client privilege.

—*Subpoenas directed to individual members of Barbers Hill school board*

Plaintiffs have served subpoenas duces tecum on individual members of the Barbers Hill school board. The subpoenas seek the production of documents but do not refer to depositions.

Barbers Hill seeks to quash the subpoenas on the basis that they are duplicative of requests for production to which Barbers Hill has already responded; Barbers Hill further accuses Plaintiffs of trying to "circumvent[] limitations on party discovery[.]" (Dkt. 198 at p. 1). In response, Plaintiffs argue that Barbers Hill's document production has not included "any emails, texts, or social media posts from several of the BHISD Board members and [has included] almost no communications *between* the BHISD Board members[.]" (Dkt. 198 at p. 3). Plaintiffs accuse Barbers Hill of "refus[ing] to conduct adequate searches" for documents. (Dkt. 198 at p. 3). Both parties refer to an agreement whereby Barbers Hill would put in writing the details of the searches that it has conducted on its social media accounts; it is not clear whether Plaintiffs are accusing Barbers Hill of violating that agreement.

The Court agrees with Judge Noland of the Middle District of Louisiana that, "although the *preferred* means for obtaining documents from a party is via a Rule 34 request for production, the fact that [Plaintiffs have] sought documents from parties through Rule 45 subpoenas is not definitively improper and therefore is not grounds for quashing the subpoenas." *Slaughter v. Atkins*, 2010 WL 11623625, at *5 (M.D. La. May 13, 2010) ("[T]he subject subpoenas will not be quashed simply because they were directed to parties (or to third-parties who are employed by or closely affiliated with parties (as current or former board members))."). If the individual board members indeed produced all responsive documents in their possession when Barbers Hill responded to Plaintiffs' requests for production, then the board members need only say so.

*—Subpoena seeking deposition of Sara Leon*

Plaintiffs have served a subpoena on Sara Leon, an attorney for Barbers Hill. Plaintiffs' rationale for trying to depose Leon is that Leon was advising Barbers Hill and had extensive discussions with the Department of Justice just before Barbers Hill amended its hair policy in December of 2019 (this was the change that forced De'Andre and Kaden to transfer). Plaintiffs seek "to discover communications between Ms. Leon and the DOJ and communications between Ms. Leon and BHISD regarding the December 2019 hair policy changes and the DOJ investigation[.]" (Dkt. 207 at p. 10). Plaintiffs accuse Barbers Hill of being uncooperative; Barbers Hill responds that it has "provided over 1,500 pages of responsive correspondence between Leon and the Department of Justice regarding the December 2019 changes to the hair policy" and that it "will tender these documents to the Court if requested." (Dkt. 214 at p. 7).

Taking the deposition of a party's attorney is a rare and "disfavored" practice that "should be employed only in limited circumstances." *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 (5th Cir. 1999). The Eighth Circuit has articulated a three-factor test under which a trial court can determine whether allowing the deposition of a party's attorney is appropriate; the Fifth Circuit has referred to that test without expressing adopting it. *Id*. To meet the Eighth Circuit's test, the party seeking to depose the other party's counsel must show: (1) no other means exist to obtain the information than to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case. *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1986). Plaintiffs falter on the first prong.

Taking the prongs in reverse order, the information sought by Plaintiffs from Leon is crucial because it bears on Barbers Hill's motives for the December 2019 policy change. In its papers, Barbers Hill has stated that it made the December 2019 policy change "because of" recommendations made by the DOJ, "and not in order to target students of a particular race." (Dkt. 57 at p. 17). Dr. Greg Poole, Barbers Hill's superintendent, has previously testified that the DOJ "implied" that Barbers Hill's hair policy "was approved" and that "[t]here were no recommendations made by the [DOJ] changing our—saying that we could not have our hair code policy." (Dkt. 207-2 at p. 14). A July 28, 2020 letter to Barbers Hill (addressed to Sara Leon) from DOJ attorney Teresa Yeh appears to contradict Barbers Hill's version of events; in her letter, Yeh specifically states that DOJ "did not recommend that [Barbers Hill] remove the provision 'Corn rows and/or dread locks are permitted if they meet the aforementioned lengths' nor recommend that [Barbers Hill] add the language 'when let down' to the 'Hair' section of the dress code." (Dkt. 222-1 at p. 6).

[1] A review of this feedback makes clear that our office did not recommend that the District remove the provision "Corn rows and/or dread locks are permitted if they meet the aforementioned lengths" nor recommend that the District add the language "when let down" to the "Hair" section of the dress code.

Moreover, the discussions between Sara Leon and Teresa Yeh are not privileged.

However, Plaintiffs have not established that they must depose Leon in order to obtain the crucial information. First, Barbers Hill states that it has produced 1,500 pages of correspondence between Leon and the DOJ; there is little discussion of that document production in the parties' briefing, and at least one of the produced documents helps Plaintiffs significantly. Second, the Court sees no legal obstacle to Plaintiffs' attempting to

depose Yeh. *Cf. Theriot*, 185 F.3d at 491 ("[T]he district court referred the Appellants to John Tanner of the DOJ as the person who would have the best knowledge and information regarding the sought information.").

The parties' briefing raises a related issue: whether Barbers Hill waived attorney-client privilege through Dr. Poole's testimony at the preliminary injunction hearing, at which Dr. Poole repeatedly stated that Barbers Hill "deferred a lot to Ms. Leon" when it was trying to follow the DOJ's recommendations. (Dkt. 207-2 at p. 15). Plaintiffs argue that Dr. Poole's testimony constitutes a waiver of privilege, and they want to depose Leon regarding the discussions that she had with Barbers Hill after she talked to the DOJ.

At this point, the Court will not find a waiver of attorney-client privilege. Plaintiffs, in an argument that carries some force, accuse Barbers Hill of improperly using attorney-client privilege as both "a sword and a shield" by relying on Leon's advice to defuse allegations of racial bias without disclosing exactly what Leon's advice was. (Dkt. 207 at pp. 11–12). See *In re Application of Chevron Corp. v. 3TM Consulting, LLC*, 2011 WL 13135155, at *3 (S.D. Tex. Jan. 10, 2011) (J. Miller) ("Under the sword-shield doctrine, work product protection is waived when a party possessing the documents seeks to selectively present the materials to prove a point, but then attempts to invoke the privilege to prevent the opponent from challenging the assertion."); *Pei-Hreng Hor v. Ching-Wu Paul Chu*, 2010 WL 4284902, at *8 (S.D. Tex. Oct. 22, 2010) (J. Ellison) ("[I]t is only fair that Plaintiff be able to discover documents, regardless of their privileged nature, relating to the subject of notice. Certainly, Defendant should not be permitted to use one attorney-

client communication that supports its laches argument while shielding those that may not.").

However, in light of the record as currently constituted, it appears that Plaintiffs can sufficiently develop their case by exploring the discussions between Leon and Yeh. By all indications, the DOJ did not advise Barbers Hill to make the December 2019 changes about which Plaintiffs complain. Additionally, evidence already exists in the record indicating that Barbers Hill simply ignored Yeh, to the point that Barbers Hill altogether stopped responding to Yeh's requests for information. In her July 28, 2020 letter, Yeh wrote that:

> On February 20, 2020, we sent the District a Supplemental Request for Information. We were and remain concerned that the District's dress and grooming code policies and practices are unclear, and that as with our initial investigation, District employees are likely enforcing a dress code policy without understanding when or how parents and students can seek exemptions.
>
> On March 16, 2020, the District indicated that it intended to respond to our request and requested an extension to the March 20, 2020 deadline, to which we agreed. We reached out to District counsel on April 22, 2020 and May 19, 2020 about the District's outstanding responses. The District did not respond to either email.

Dkt. 222-1 at p. 7.

At the preliminary injunction hearing, Dr. Poole admitted that Barbers Hill pushed back on Yeh's recommendations. He testified that Yeh "did not like a dress code, period. And there were many statements made that that was her personal opinion, which was a little difficult for me because I didn't know that was her role[.]" (Dkt. 207-2 at p. 10). He further testified, in response to a question asking whether Barbers Hill abided by Yeh's recommendations:

```
Q. And did you abide by those recommendations?
A. Sir, I completely relied on our counsel, and where
```

> the recommendations were legal in nature, yes; but there were many recommendations that truly, and anyone that looked, indicated perhaps a bias that she did not think a dress code was good, period.

Dkt. 207-2 at p. 11.

Dr. Poole also testified to his understanding that Barbers Hill did not have to listen to mere "recommendations" from the DOJ:

> First of all, my understanding of the DOJ, is that everything they gave us was recommendations. So my recollection and understanding was we certainly wanted to please the DOJ, but that they did not make an official ruling, that we were not -- whatever the legal terminology is -- they took no action, but they had recommendations. So that's number one.

Dkt. 207-2 at p. 18.

At this time, the Court does not find that Barbers Hill waived attorney-client privilege. Accordingly, Barbers Hill's motion to quash the deposition of Sara Leon (Dkt. 204) is **GRANTED**. This determination is without prejudice to Plaintiffs' reasserting the issue after the parties have explored the discussions between Leon and Yeh.

> —*Plaintiffs' motion to compel the production of information regarding the justification for Barbers Hill's hair policy*

Plaintiffs seek an order "compelling [Barbers Hill] to produce documents and information that explain the original justification for [its] grooming code provisions related to the hair policy . . . and justifications for any changes or modifications to the [hair

policy.]" (Dkt. 211 at p. 2). The request is limited to Plaintiffs' gender discrimination claims. (Dkt. 211 at p. 3). Barbers Hill contends that its document production on this issue has been extensive. (Dkt. 215 at pp. 7–8).

In its response to Plaintiffs' motion to compel, Barbers Hill proposes the following amendments and supplements to its production:

> Based on the Court's concerns that were raised during the August 2, 2022, discovery hearing, the District intends to amend its answers to Plaintiffs' interrogatories to reflect, where needed, (1) the earliest date (that can be confirmed from documentation still in the District's possession) of when the policy restricting male students' hair length was in place and (2) how that determination was made (i.e., by reviewing Board minutes and agendas in the District's possession). Further, the District agrees to produce all Board minutes and agendas in its possession that concern the hair policy (similar to BHISD Bates 2211-2576), as well as any Board packets that were prepared to present revisions to the hair policy the Administration was requesting the Board adopt (similar to BHISD Bates 41-248 and 2577- 2685).

Dkt. 215 at p. 17.

In their reply brief, Plaintiffs do not explain why Barbers Hill's proposal is unacceptable. Rather, they seem to believe that Barbers Hill will not follow through without a Court order. (Dkt. 218 at p. 10). At this juncture, given Barbers Hill's agreement to produce additional responsive materials, the Court will not enter a formal order. Based on the statements of counsel on the record, this issue is currently moot and the requested documents are being produced. Accordingly, Plaintiffs' motion to compel the production

of information regarding the justification for Barbers Hill's hair policy (Dkt. 211) is **DENIED without prejudice** to being reasserted.

—*Barbers Hill's request for sanctions based on Plaintiffs' text messages*

Barbers Hill seeks sanctions against Plaintiffs, alleging that "Sandy Arnold and Kaden Bradford, as well as Cindy Bradford, compromised the integrity of the July 2020 preliminary injunction hearing by secretly colluding to provide testimony to Kaden Bradford and his mother when being examined by [Barbers Hill's] attorney." (Dkt. 196 at p. 1). The request for sanctions is based on text messages sent among Sandy Arnold, Kaden Bradford, and Cindy Bradford while Kaden and Cindy were testifying at the July 2020 preliminary injunction hearing, which was conducted over Zoom. Barbers Hill argues that the text messages warrant death penalty sanctions against Kaden Bradford and Sandy Arnold because the text messages amount to the subornation of perjury, witness tampering, and fraud on the Court. (Dkt. 196 at pp. 15–18).

The Court has reviewed the text messages submitted by Barbers Hill, along with the excerpts of testimony provided by the parties and the Court's own opinion granting Kaden Bradford's request for a preliminary injunction; and the Court has concluded that the behavior of Sandy Arnold, Kaden Bradford, and Cindy Bradford does not warrant sanctions. The testimony addressed in the text messages was either irrelevant to the Court's decision or duplicative of other evidence in the record. The weightiest testimony that was implicated by the text messages was Kaden Bradford's testimony that "[y]ou don't cut locs." (Dkt. 98 at p. 2). The testimony about cutting locs was the subject of text messages in which Sandy Arnold told Cindy Bradford to "tell Kaden stick to same answer u don't

cut locks." (Dkt. 196 at p. 5). However, Kaden's testimony about not cutting locs went far beyond the simple statement that "you don't cut locs;" Kaden further testified that he could not cut his locs because "they would unravel, and [he] would lose all the hair process and growth that [he had] had over the years." (Dkt. 129 at p. 57). There is no mention in the text messages between Kaden, Sandy, and Cindy about locs unraveling when cut. Moreover, Kaden further testified that he "formed [his] loc[s] for the primary reason of [his] black identity and [his] ties to the Trinidadian and West Indies culture"—another aspect of Kaden's locs that went unremarked in the text messages. (Dkt. 129 at p. 56). Kaden's testimony about not cutting his locs and about forming his locs to honor his family's Trinidadian heritage was bolstered by the testimony of Professor D. Wendy Greene, who testified by affidavit that "[l]ocs are a symbol of reverence to West Indian ancestors" and that "West Indian cultural traditions prohibit cutting or trimming of locs." (Dkt. 44-2 at p. 6).

Accordingly, Barbers Hill's motion for sanctions (Dkt. 196) is **DENIED**. All that said, the Court emphatically condemns the behavior of Sandy Arnold, Kaden Bradford, and Cindy Bradford in communicating during testimony at a court hearing. Such conduct is inexcusable, and if it happens again, will be severely sanctioned.

*—Conclusion*

Barber Hill's motion for sanctions (Dkt. 196) is **DENIED**.

Barbers Hill's motion to quash the deposition of Sara Leon (Dkt. 204) is **GRANTED**. This determination is without prejudice to Plaintiffs' reasserting the issues addressed in the motion after the parties have explored the discussions between Sara Leon and Teresa Yeh.

Plaintiffs' motion to compel the production of information regarding the justification for Barbers Hill's hair policy (Dkt. 211) is **DENIED without prejudice** to being reasserted.

SIGNED at Houston, Texas on November 29, 2022.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE