IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVERETT DE'ANDRE ARNOLD, | § | |
| KADEN BRADFORD, and | § | |
| SANDY ARNOLD, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | C.A. NO.: 4:20-CV-01802 |
| | § | |
| BARBERS HILL INDEPENDENT | § | JURY TRIAL REQUESTED |
| SCHOOL DISTRICT, | § | |
| | § | |
| Defendant. | § | |

## MOTION FOR PROTECTION OF THE BOARD'S LEGISLATIVE IMMUNITY

Barbers Hill Independent School District (the District) moves for a protective order pursuant to Federal Rule of Civil Procedure 26(c) to bar Plaintiffs from asking questions in depositions that elicit testimony and information protected by the District's Board of Trustees' legislative immunity and testimonial privilege, as follows:

## INTRODUCTION AND SUMMARY OF THE ARGUMENT

The doctrine of legislative immunity protects legislative actors from being called to testify about legislative activities that are not known to the public. And the law is clear that legislative immunity and its attendant testimonial privilege extend to school board members. Consequently, Mr. Skinner, Dr. Poole, and any other District witness having non-public knowledge about the Board's legislative activities, have the right to invoke the testimonial privilege in response to questions that could elicit testimony on the following topics:

- The subjective intent, thought process, support or non-support, and rationale of any current or former Board members regarding the adoption of the current or past versions of the District's dress and grooming code;

- The subjective intent, thought process, support or non-support, and rationale of any current or former Board members for changing or revising the District's dress and grooming code;

- The motives of any current or former Board members for adopting the District's current or past dress and grooming codes;

- The subjective intent, thought process, support or non-support, and rationale of any current or former Board members regarding the adoption of past or current Board policies;

- Details pertaining to why Mr. Skinner or any former or current Board members voted to adopt or maintain a dress and grooming code for the District; and

- Any other information that would invade the Board's legislative immunity.

As explained below, Plaintiffs cannot make any showing that would overcome the application of legislative immunity in this case. Nevertheless, they seek to invade a privilege designed to protect the discussions necessary to the legislative process. As such, this Court should grant the District's Motion for Protection and bar Plaintiffs from asking questions related to any legislative activities or that otherwise invade the Board's legislative immunity.

## RELEVANT PROCEDURAL HISTORY

On May 16, 2022, the Parties filed a joint letter offering the Court additional briefing and argument on a discovery dispute regarding Plaintiffs' request to exceed the 10-deposition limit set forth in Federal Rule 30(a). *See* Dkt. No. 193; *see also* Dkt. Nos. 165, 192. In its briefing, the District presented argument and authority on legislative immunity

to refute Plaintiffs' basis to depose every single Board member. *See* Dkt. No. 193 at p.15. Specifically, the District argued Plaintiffs are not entitled to discovery on each Board members' motive or reasoning behind adopting the District's dress and grooming policy, *i.e.* a legislative act. *Id.* On May 25, 2022, during a hearing before the Court, the District asserted the same legislative immunity argument. *See* Dkt. No. 197. The Court ultimately granted Plaintiffs' request to exceed the 10-deposition limit; however, the Court limited Plaintiffs to the deposition of the Board President and no other Board members. Dkt. Nos. 197, 248.

On March 14, 2023, Plaintiffs noticed Mr. Fred Skinner, the former Board President and current Trustee Member for the District, for deposition on May 4, 2023. The Parties have agreed to conduct the deposition of Dr. Greg Poole, current Superintendent of the District, the week of May 8th, 2023. On March 21, 2023, in email correspondence, the District reminded Plaintiffs of its continued position regarding legislative immunity and its intention to object and instruct witnesses not to answer any questions that invade the Board's legislative immunity.

At a status conference held before the Court, on March 30, 2023, the Parties advised the Court of this discovery dispute. *See* Dkt. Nos. 262-263. Pursuant to the Court's order, the Parties conferred and agreed on an expedited briefing schedule on the District's motion for protection. *See* Dkt. No. 263.

## ISSUE STATEMENT

This Court should bar Plaintiffs from asking questions of deponents that seek to reveal the Board's subjective intentions, motivations, thought processes, and any other

information not available to the public concerning the adoption of the District's male hair length policy, or any prior iterations of the District's male hair length policy, in any upcoming depositions, because such inquiry is barred by legislative immunity and the testimonial privilege.

## ARGUMENT AND AUTHORITIES

### A.    Standard of Review.

Federal Rule of Civil Procedure 26(c) grants this Court the authority to, "for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26. This includes "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." *Id.* And absent "extraordinary instances," a trial court must uphold a proper invocation of legislative immunity. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 268 (1977) ("In some extraordinary instances the members might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege."); *see also Veasey v. Abbott*, 830 F.3d 216, 233 (5th Cir. 2016).

### B.    Legislative immunity, and the testimonial privilege it encompasses, is designed to protect individuals, like Mr. Skinner and Dr. Poole, from disclosing information related to confidential legislative activities.

Under the doctrine of legislative immunity, federal, state, and regional legislators are entitled to invoke a testimonial privilege. *See Bogan v. Scott-Harris*, 523 U.S. 44, 48–50 (1998); *see also Hernandez v. City of Lafayette*, 643 F.2d 1188, 1193 (5th Cir. 1981). This privilege stems from Article I, Section 6 of the U.S. Constitution, which states:

4

> The Senators and Representatives . . . shall, in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same . . . .

U.S. Const., Art. I, § 6. That same clause encompasses the testimonial privilege where it states, "and for any Speech or Debate in either House, [Senators and Representatives] shall not be questioned in any other Place." *Id.* The United States Supreme Court has stated this testimonial privilege was "designed to aid in the effective functioning of government." *Gravel v. U.S.*, 408 U.S. 606, 617 (1972). It does this by barring plaintiffs from deposing local legislators as to certain legislative acts. *See id. at* 616 (holding that a senator could not be required to testify about legislative acts that occurred in a subcommittee meeting); *see also Cunningham v. Chapel Hill, ISD*, 438 F. Supp. 2d 718, 722 (E.D. Tex. 2006) ("The Supreme Court and several circuit courts have clearly recognized that the doctrine of legislative immunity protects legislative actors from being called to testify about their legislative activities.").

**C.     The District's Board enjoys the protection of legislative immunity, because adopting policy, including a dress and grooming code, is a legislative act as a matter of law.**

The doctrine of legislative immunity's protection extends to any individual "performing legislative acts, regardless of the title of their positions, and regardless of whether they were elected or appointed." *Bannum, Inc. v. City of Beaumont, Tex*., 236 F. Supp. 2d 633, 635 (E.D. Tex. 2002) (citing *Calhoun v. St. Bernard Parish*, 937 F.2d 172, 174 (5th Cir.1991)); *see also Marrero v. City of Hialeah,* 625 F.2d 499, 508 (5th Cir.1980)

("[I]t is the official function that determines the degree of immunity required, not the status of the acting officer."); *Bryan v. City of Madison, Miss*., 213 F.3d 267, 272 (5th Cir. 2000) ("Legislative immunity protects officials fulfilling legislative functions even if they are not 'legislators.'"). Thus, the inquiry in this case turns on whether the actions by any current or former Board members to adopt or revise the District's dress and grooming code consisted of legislative activity, *i.e.,* whether they were legislative in nature. *See Oscar Renda Contracting, Inc. v. City of Lubbock, Tex*., No. 5:05-CV-029-C, 2007 WL 9718491, at *2 (N.D. Tex. Sept. 17, 2007) ("[A] court must determine if the act for which the privilege is being asserted was a legislative act.").

"[A]ctions are 'legislative' if they have 'the purpose and effect of altering the legal rights, duties, and relations of persons ... outside the legislative branch.'" *Jarkesy v. Sec. & Exch. Comm'n*, 34 F.4th 446, 461 (5th Cir. 2022) (quoting *INS v. Chadha*, 462 U.S. 919, 952 (1983)). The enactment of a general policy is a legislative act as a matter of law. *Bryan*, 213 F.3d at 273 ("If the action involves establishment of a general policy, it is legislative."). As such, the enactment of the Board's policies are legislative acts as a matter of law, because they apply to the entire school district and are not "specifically focused" on any one individual or group. *See Oscar Renda Contracting, Inc*., 2007 WL 9718491, at *2. And so are all other activities inherent in the enactment of policies, such as voting on the policy and the subjective intentions and thoughts regarding the policy's enactment. *See, e.g., Bogan*, 523 U.S. at 55 (holding that a legislator's "acts of voting for an ordinance were, in form, quintessentially legislative"); *see also Harding v. Cnty. of Dallas, Tex.*, No. 3:15-CV-0131-D, 2016 WL 7426127, at *3–5 (N.D. Tex. Dec. 23, 2016) (noting that

6

information about the subjective intent of a county official in making a policy decision would qualify as a legislative act); *Cunningham*, 438 F. Supp. 2d at 720 (holding that a school board member could not be made to testify about his voting decision to deny a Level III grievance and ratify the dissolution of a department due to legislative immunity); *Oscar Renda Contracting, Inc*., 2007 WL 9718491, at *2 (finding that "any attempts to look beyond the actual decision to the underlying motivation of council members is an inappropriate type of inquiry as determined by the Supreme Court.") (citing *Bogan*, 523 U.S. at 54).

The policy at issue in this case is the portion of the District's dress and grooming code that governs the length of male students' hair. The District's Board voted to adopt and approve the dress and grooming code that is in effect for the entire District. Accordingly, any acts or rationale possessed by Mr. Skinner, Dr. Poole, or any other current or former Board member relating to the adoption of the District's dress and grooming code are core legislative activities that are protected by the testimonial privilege afforded by legislative immunity. The scope of information protected by legislative immunity and shielded by the testimonial privilege encompasses, but is not limited to, the subjective intentions, motivations, and thoughts on the District's dress and grooming code; the reasoning for voting for or against the dress and grooming code; and any information or discussions from closed or executive sessions. Thus, Dr. Poole, Mr. Skinner, and any current or former Board members are protected from testifying and revealing information related to these legislative acts.

**D.    Plaintiffs cannot overcome the Board's legislative immunity.**

As established above, Mr. Skinner, Dr. Poole, and other District witnesses are entitled to assert the testimonial privilege to protect legislative immunity in response to questions that would seek to invade the privilege. And, as explained below, Plaintiffs cannot establish the single exception to the application of legislative immunity.

1.    The very limited "extraordinary instances" exception to the applicability of legislative immunity does not apply as a matter of law.

The Supreme Court in *Arlington Heights* held that "[i]n some extraordinary instances[,] the members [of the relevant governmental entity] might be called to the stand at trial to testify concerning the purpose of the official action, although even then such testimony frequently will be barred by privilege." *Vill. of Arlington Heights*, 429 U.S. at 268. While the Supreme Court did not define "extraordinary instances," lower court decisions shed light on the issue.

Recently, the Ninth Circuit observed that *Arlington Heights* "itself was an equal protection claim alleging racial discrimination – putting the government's intent directly at issue – but [the Supreme Court] nonetheless suggested that such a claim was not, in and of itself, within the subset of 'extraordinary instances' that might justify an exception to the privilege." *Lee v. City of Los Angeles*, 908 F.3d 1175, 11888 (9th Cir. 2018). Likewise, the First Circuit, in 2021, mirrored this analysis, explaining that "were we to find the mere assertion of a federal claim sufficient, even one that addresses a central concern of the Framers, the privilege would be pretty much unavailable largely whenever it is needed." *American Trucking Associations, Inc. v. Alviti,* 14 F.4th 76, 88 (1st Cir. 2021).

Additionally, while the Fifth Circuit has never found extraordinary circumstances to exist, it has acknowledged the exception and made clear the heavy burden necessary to show that extraordinary circumstances defeat the privilege. *See Veasey*, 830 F.3d at 233; *see also League of United Latin Am. Citizens Abbott v. United States*, No. 22-50407, 2022 WL 2713263, at *2 (5th Cir. May 20, 2022). In *Veasey,* the Fifth Circuit held that the lower court "mistakenly relied in part on speculation" about a legislator's motives behind voting a certain way on Texas Senate Bill 14. *Id.* In making this finding, the Fifth Circuit cited the "extraordinary instances" language from *Arlington Heights* to support its assertion that "[d]iscerning the intent of a decisionmaking body is ***difficult and problematic***." *Id.* (emphasis added). Relying on Supreme Court authority, the Fifth Circuit continued, stating that "[i]nquiries into congressional motives or purposes are a ***hazardous matter***." *Id.* (emphasis added) (quoting *United States v. O'Brien*, 391 U.S. 367, 383–84 (1968)).

Further, in analyzing the contours of legislative immunity and the testimonial privilege, the Texas Supreme Court has concluded that, at a minimum, "all other available evidentiary sources must first be exhausted before extraordinary circumstances will be considered." *In re Perry*, 60 S.W.3d 857, 860–62 (Tex. 2001); *see also Austin Lifecare, Inc. v. City of Austin*, No. A-11-CA-875-LY, 2012 WL 12850268, at *2 (W.D. Tex. Mar. 20, 2012) ("Additionally, the court finds Plaintiffs have alternative methods for discovering the information they seek, as they may obtain direct evidence from other sources").

Against this backdrop of legal authority, Plaintiffs are left to argue they are entitled to inquire into "each board member's mindset, intent, and reasoning for his or her decision" to adopt a race-neutral dress and grooming code, merely because they bring a race

discrimination claim. *See* Dkt. No. 193 at pp. 6-7. However, several circuit courts have held an equal protection claim alleging racial discrimination is not, in and of itself, an "extraordinary instance" warranting an intrusion into the legislative process. *See, e.g., Lee,* 908 F.3d at 1187–88; *see also Alviti,* 14 F.4th at 88. This makes sense. Otherwise, legislative immunity would not be available in a large category of cases. And there is nothing in caselaw or the history and tradition that supports the doctrine of legislative immunity that would support such a result. To the extent Plaintiffs attempt to rely on their gender claim to establish extraordinary circumstances, the Court should reach the same result for the same reasons.

Otherwise, the only other justification Plaintiffs have previously offered is that the Parties' previous disagreement as to the scope of document production somehow justifies overcoming legislative immunity. *See* Dkt. No. 193 at p. 6. This is even less compelling. First, this issue has since been resolved and is, therefore, moot, so it cannot possibly support a finding of "extraordinary circumstances." However, even if the scope of document production was still in dispute, such a dispute would not be sufficient to defeat the Board's legislative immunity, as the mere difficulty of obtaining evidence is not a sufficient basis for piercing the protection of legislative immunity. Indeed, if document disputes in litigation were enough to defeat legislative immunity, the privilege would be nearly worthless. *See Alviti,* 14 F.4th at 88.

   2.    The Board members have not waived their legislative immunity.

To the extent Plaintiffs attempt to argue legislative immunity has been waived (as they indicated they might at the March 30, 2023, status conference) by prior testimony

during the preliminary injunction hearing, no Board members testified at that hearing. *See*

Dkt. Nos. 77-79. Nor have any Board members offered any other testimony in this matter

and caselaw is clear that the testimonial privilege belongs to the individual legislator.

*Hobart v. City of Stafford*, No. CIV.A 09-3332, 2010 WL 3419660, at *3 (S.D. Tex. Aug.

30, 2010). As such, the Board's legislative immunity remains intact.

## CONCLUSION AND PRAYER

Legislative immunity, and its attendant testimonial privilege, protects any District

witness from answering questions regarding legislative activities, including the mindset,

intent, and reasoning behind any current or former Board members' decision to adopt the

District's dress and grooming code. As such, this Court should grant Barbers Hill

Independent School District's Motion for Protection and bar Plaintiffs from asking

questions eliciting such information in any of the upcoming depositions, including the

depositions of Mr. Skinner and Dr. Poole.

Respectfully submitted,

ROGERS, MORRIS, & GROVER, L.L.P.

RICHARD A. MORRIS
Attorney-in-Charge
State Bar No. 14497750
Fed. I.D. 2780689
rmorris@rmgllp.com
JONATHAN G. BRUSH
State Bar No. 24045576
Fed. I.D. No. 619970
jbrush@rmgllp.com
AMY DEMMLER
State Bar No. 24092337
Fed. I.D. No.  3227731
ademmler@rmgllp.com
5718 Westheimer, Suite 1200
Houston, Texas 77057
Telephone:    713/960-6000
Facsimile:    713/960-6025

ATTORNEYS FOR BARBERS HILL ISD

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that she conferred with counsel for the Plaintiffs, in good faith on March 21, 2023. The Plaintiffs are opposed to this motion and the relief sought in this motion.

Attorney for Barbers Hill ISD

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 5, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system which will send electronic notification of such filing to all counsel of record.

_____
Attorney for Barbers Hill ISD