# APPENDIX G

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EVERETT DE'ANDRE ARNOLD,<br>KADEN BRADFORD, and<br>SANDY ARNOLD,<br><br>Plaintiffs, | §<br>§<br>§<br>§<br>§<br>§ | |
| vs. | § | C.A. NO.: 4:20-CV-01802 |
| | § | |
| BARBERS HILL INDEPENDENT<br>SCHOOL DISTRICT,<br><br>Defendant. | §<br>§<br>§<br>§ | JURY TRIAL REQUESTED |

**APPENDIX G TO JOINT PRETRIAL ORDER – BARBERS HILL INDEPENDENT SCHOOL DISTRICT'S MEMORANDUM OF LAW**

Barbers Hill Independent School District (the District) submits the following memorandum of law for the Court to consider in conjunction with the Joint Pretrial Order.

**A. Incorporation of Summary Judgment Briefing**

The District filed a motion for summary judgment [Dkt. 327] and reply in support [Dkt. 340] seeking dismissal of all claims asserted by Plaintiff Sandy Arnold, and a separate motion for summary judgment [Dkt. 336] and reply in support [Dkt. 357] seeking dismissal of all claims asserted by Plaintiffs De'Andre Arnold and Kaden Bradford. Those motions remain pending before the Court. In an abundance of caution, and to avoid any risk of waiver, the District incorporates those motions and replies in support here and submits that it is entitled to dismissal of all of Plaintiff's claims because no genuine dispute of material fact exists for trial. *See* Fed. R. Civ. P. 10(c).

**B. Applicable Propositions of Law**

Section VII of the Joint Pretrial Order, titled "Agreed Applicable Propositions of Law," contains an incomplete recitation of legal standards applicable to Plaintiffs' claims. The District respectfully contends that the following are the complete and proper legal standards by which the Court should evaluate Plaintiffs' claims.

1. Standards for Monell liability governing Plaintiffs' Equal Protection race discrimination, First Amendment, and Due Process claims.

"To state a claim under [42 U.S.C.] § 1983, a plaintiff must (1) allege a violation of rights secured by the Constitution or laws of the United States and (2) demonstrate that the violation of rights was committed by a person acting under color of state law." *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th Cir. 1995). To state a claim under § 1983 against a public school district, a plaintiff must establish municipal liability pursuant to the Supreme Court's decision in *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Under *Monell*, "the unconstitutional conduct must be directly attributable to the [entity] through some sort of official action or imprimatur; isolated unconstitutional actions by [] employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578 (5th Cir. 2001). Under Texas law, final policy-making authority in a public school district rests exclusively with the district's elected board of trustees. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 247 (5th Cir. 2003). The Board is the District's final policymaker for the purpose of analyzing municipal liability. *See Jett v. Dallas Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993). Moreover, a school district cannot be held liable under § 1983 for an employee's alleged misconduct based on *respondeat superior* or vicarious liability theories. *See Monell*, 436 U.S. at 694.

A showing of municipal liability requires three elements: (1) a policymaker; (2) an official policy or custom; and (3) a violation of constitutional rights whose "moving force" is the policy or custom. *See id*. A custom or official policy is: (1) an express policy officially adopted or promulgated by the policy-making authority; or (2) a persistent, widespread practice by employees, that the policy-maker or official to whom that body had delegated policy-making authority had actual or constructive knowledge of, that is so common and well settled it constitutes a custom that fairly represents an official policy. *Eugene v. Alief Indep. Sch. Dist.,* 65 F.3d 1299, 1304 (5th Cir. 1995). A pattern of prior, highly similar incidents is necessary to show both a customary policy and deliberate indifference. *Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003); *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382-85 (5th Cir. 2005); *Valle v. City of Houston*, 613 F.3d 536, 548 (5th Cir. 2010). A pattern of prior incidents "must have occurred for so long or so frequently that the course of conduct warrants the attribution to [the Board] of knowledge that the objectionable conduct is the expected, accepted practice of [District employees]." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 850 (5th Cir. 2009). "A pattern requires similarity and specificity; prior indications cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Id.* (internal quotations omitted) (citing *Estate of Davis*, 406 F.3d at 383) (cleaned up). Further, a pattern requires "sufficiently numerous prior incidents, as opposed to isolated instances." *Id*. (internal quotations omitted); *Valle*, 613 F.3d at 548 (10 incidents not enough); *Peterson*, 588 F.3d at 850-51 (27 incidents not enough). A plaintiff cannot be his own pattern. *Cambric v. City of Corpus Christi*, 170 F.4th 321, 325 (5th Cir.

2026) (holding general policy allegations coupled with a single illustrative example – the plaintiff's own experiences with the governmental entity – don't sufficiently plead a pattern of prior unconstitutional acts sufficient for imposing municipal liability).

A plaintiff must also prove the District's policymaker – here, the Board – had actual knowledge and was deliberately indifferent to the discrimination. *Hagan v. Houston Indep. Sch. Dist.*, 51 F.3d 48 (5th Cir. 1995). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Estate of Davis,* 406 F.3d at 381.

2. <u>Section 1983 Equal Protection race discrimination</u>

To establish a 42 U.S.C. § 1983 claim for race discrimination, a plaintiff must prove intentional race discrimination. *Veasey v. Abbott*, 830 F.3d 216, 231 (5th Cir. 2016) (en banc). Subjective beliefs do not create an inference of intentional discrimination. *See, e.g.*, *Pathria v. Univ. of Tex. Health Sci. Ctr.*, 531 F. App'x 454, 455 (5th Cir. 2013); *see also Noel v. Shell Oil Co.*, 261 F. Supp. 3d 752, 762 (S.D. Tex. 2017) ("Conclusory allegations, unsubstantiated assertions, improbable inferences, and speculation are not competent evidence.").

3. <u>Title VI.</u>

Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. "Only racial discrimination of the same character as that forbidden by the Equal Protection Clause is prohibited by [Title VI]." *Rollerson v. Brazos*

*River Harbor Navigation Dist. of Brazoria Cnty. Tex.*, 6 F.4th 633, 639 (5th Cir. 2021). To establish a Title VI claim, a plaintiff must prove discriminatory intent. *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 398, 408 (5th Cir. 2015). "Title VI allows neither personal liability claims against individuals nor vicarious liability claims against employers for the acts of their employees." *Rodgers v. Smith*, 842 F. App'x 929 (5th Cir. 2021).

Under the analogous employment discrimination statute, Title VII, employers may prohibit hairstyles, including locs, entirely. *Equal Employment Opportunity Commission v. Catastrophe Management Solutions,* 852 F.3d 1018 (11th Cir. 2016).

4. Section 1983 gender discrimination.

Plaintiffs' gender discrimination claim should be analyzed under the rational basis standard articulated in *Karr v. Schmidt*, 460 F.2d 609 (5th Cir. 1972) and not intermediate scrutiny. The importance of the governmental interest at issue and the rationality of the relationship between means and ends are questions of law for the Court rather than questions of fact for the jury.

Should the Court apply intermediate scrutiny, that is a two-pronged test that requires the District to show "the challenged classification serves important governmental objectives and that the discriminatory means employed are substantially related to the achievement of those objectives.'" *U.S. v. Virginia*, 518 U.S. 515, 533 (1996). Again, the importance of the governmental interest at issue and the substantialness of the relationship between means and ends are questions of law for the Court rather than questions of fact for the jury.

This intermediate scrutiny burden "is demanding and . . . rests entirely on the State." *United States v. Virginia*, 518 U.S. 515, 533 (1996). However, intermediate scrutiny doesn't require a perfect fit. *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989). The test is "more flexible." *Id*. Exceedingly tenuous connections between goals and sex-differentiating rules won't survive. *See, e.g.*, *Craig v. Boren*, 429 U.S. 190, 201-02, 204 (1976). But by contrast, a rule that substantially relates to an important goal, even if it's not always realized, will withstand scrutiny. *Nguyen v. I.N.S.*, 533 U.S. 53, 70 (2001). To prevail, the District must be able to articulate a rationale underpinning its policy that serves an important governmental interest and show that the District's policy is substantially related to advancing that interest. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 441 (1985). The classification "must substantially serve an important governmental interest *today*," *Sessions v. Morales-Santana*, 582 U.S. 47, 59 (2017) (emphasis added) (quoting *Obergefell v. Hodges*, 576 U.S. 644, 673 (2015)); *Veasey*, 830 F.3d at 232 (citing *McCklesky v. Kemp*, 481 U.S. 279, 298 n.20 (1987), for the proposition that "unless historical evidence is reasonably contemporaneous with the challenged decision, it has little probative value.").

Under the first prong, community expectations, student discipline and achievement, and career readiness are important governmental interests as a matter of law. *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 435-36 (9th Cir. 2008) (finding the school's purported reasons for the uniform policies – (1) increasing student achievement; (2) promoting safety; and (3) enhancing a positive school environment – were more than sufficient to overcome intermediate scrutiny); *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 391-92 (6th Cir.

2005) (affirming the district court's order granting summary judgment on plaintiff's First and Fourteenth Amendment claims, and acknowledging that "increasing school unity and pride, . . . [and] improving test scores . . . are all important governmental interests [served by a school uniform policy]"); *Canady v. Bossier Parish School Board*, 240 F.3d 437, 443 (5th Cir. 2001) (affirming the district court's order granting summary judgment on plaintiff's First and Fourteenth Amendment claims and acknowledging that the goals of "increas[ing] test scores and reduc[ing] disciplinary problems throughout the school system" were "undoubtedly [] important interest[s]" served by a uniform policy); *George*, 2025 WL 1685239 (finding the Restriction survives intermediate scrutiny, as a matter of law); Order at pp. 17-18, *Woodley, et al. v. Tatum Independent School District*, C.A. No. 2:21-CV-00364-RWS (E.D. Tex. Oct. 13, 2023) [ECF No. 119] (Schroeder, J.) (finding a school district's stated bases for hair length and style restrictions for male students – which included community expectations, student success, and career readiness – survived intermediate scrutiny, as a matter of law).

The second prong requires "a 'fit' between the [government's] ends and the means chosen to accomplish those ends." *Fox*, 492 U.S. at 480. The "fit" need not be perfect, and its scope should be "in proportion to the interest served." *Id.*; *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 837 F.3d 678, 693 (6th Cir. 2016). Intermediate scrutiny doesn't demand narrow tailoring and even "less direct nexus[es]" can be "still substantially related" to important goals. *Vermont Right to Life Comm., Inc. v. Sorrell*, 758 F.3d 118, 133-34 (2d Cir. 2014). And although rules intend to accomplish goals, "[n]one of [the Supreme Court's] gender-based classification equal protection cases have required that the [rule]

under consideration must be capable of achieving its ultimate objective in every instance." *Nguyen*, 533 U.S. at 70.

All men in the U.S. must enroll in the Selective Service on their eighteenth birthday. 50 U.S.C. § 3802(a); *Rostker v. Goldberg*, 453 U.S. 57, 72–73 (1981). The District is required under Texas law to prepare its students for careers and service in the military. Tex. Educ. Code §§ 28.008, 28.01. Employers can legally restrict hair length and styles of their employees. *Willingham v. Macon Telegraph Publishing Company*, 507 F.2d 1084 (5th Cir. 1975) (en banc); *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998) ("[D]iffering hair length standards for men and women do not violate Title VII, a holding which squarely forecloses the plaintiffs' discrimination claim"); *EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1028-29, n.4 (11th Cir. 2016) (reaffirming *Willingham* and *Harper*); *Jespersen v. Harrah's Operating Co., Inc.*, 444 F.3d 1104 (9th Cir. 2006) (en banc) (finding employer's grooming policy that required female bartenders to wear makeup and male bartenders to keep their hair short did not constitute impermissible sex stereotyping), at 1110 ("We have long recognized that companies may differentiate between men and women in appearance and grooming policies, and so have other circuits . . . The material issue under our settled law is not whether the policies are different, but whether the policy imposed on the plaintiff creates an 'unequal burden' for the plaintiff's gender.") (collecting cases), at 1112 ("The requirements must be viewed in the context of the overall policy.").

The District has already prevailed, as a matter of law, on this claim in a case that was pending before Judge Brown of the Southern District of Texas. *George v. Abbott*, 2025

WL 1685239 (S.D. Tex. June 16, 2025) (granting reconsideration and summary judgment and finding that the Restriction does not violate the Fourteenth Amendment's Equal Protection Clause).

5. <u>Title IX discrimination and retaliation.</u>

Title IX states that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). A plaintiff may establish his or her Title IX claim for intentional sex discrimination by demonstrating sex was one "but-for" cause of their exclusion from educational programs. *Bostock v. Clayton Cty*., 590 U.S. 644 (2020). A plaintiff bringing a claim under Title IX may use either direct or circumstantial evidence of intentional discrimination. *Cf. Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994). Title IX does not apply to dress or grooming codes. 47 Fed. Reg. 32526-02, 32526–27 (July 28, 1982) ("Development and enforcement of appearance codes is an issue for local determination."); 82 Fed Reg. 46655 (Oct. 6, 2017); 65 Fed. Reg. 52858-01, 52858 (Aug. 30, 2000). For this reason, Plaintiffs Arnold and Bradford's claim of gender discrimination also does not present a jury question because it is not a legally cognizable claim on these facts.

To establish her Title IX retaliation claim, Plaintiff Sandy Arnold must show the defendant retaliated against her *because* she complained of sex discrimination. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 169 (2005). "In order to establish the requisite causal link, a plaintiff need not prove that her protected activity was the sole factor in motivating the [] challenged decision." *Miles v. Port Arthur ISD*, 772 F. Supp. 3d 770,

788–89 (E.D. Tex. 2025) (citing *Wallace v. Seton Fam. of Hosps*., 777 F. App'x 83, 91 (5th Cir. 2019)). "Rather, a causal link is established when the evidence demonstrates that the [] decision to take adverse action was based in part on knowledge of the [] protected activity." *Id.* (citing *Smith v. Kendall*, No. 23-50713, 2024 WL 4442040, at *7 (5th Cir. Oct. 8, 2024) (other citations omitted)). "[A] successful Title IX retaliation claim requires a causal connection between the alleged retaliation and some adverse impact that is rationally connected with any aspect of federally-funded education." *Alice L. v. Eanes Indep. Sch. Dist.*, No. A-06-CA-944-SS, 2007 WL 9710281, at *6 (W.D. Tex. Dec. 18, 2007) (internal quotations omitted). Put another way, there must be some "adverse action which excluded [Plaintiff] from participation, denied [her] the benefit of, or subjected [her] to discrimination under a program receiving federal financial assistance." *Id*.

6. First Amendment – Freedom of Expression.

The general First Amendment right to freedom of expression applies to conduct revealing an intent to convey a particularized message where there is a likelihood that the message would be understood by those exposed to it. *Canady v. Bossier Par. Sch. Bd*., 240 F.3d 437, 440 (5th Cir. 2001). First Amendment protections only extend to conduct that is inherently expressive. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 65-66 (2006). When examining content-neutral restrictions on expressive activities, the Court must determine whether the restriction survives intermediate scrutiny; namely: (1) the restriction is within the Constitutional power of the government; (2) the restriction furthers an important or substantial governmental interest; (3) the government's important or substantial interest is unrelated to the suppression of student expression; and (4) the

incidental restrictions on First Amendment activities are no more than is necessary to facilitate the government's important or substantial interest. *Littlefield v. Forney Independent School District*, 268 F.3d 275, 286 (5th Cir. 2001).

The First Amendment does not shield a student's decision to wear long hair or any other chosen hairstyle. *Karr*, 460 F.2d at 613-14 (relying in part on *Tinker*, 393 U.S. at 509); *Ferrell v. Dallas Indep. Sch. Dist.*, 392 F.2d 697, 704-05 (5th Cir. 1968) (school district did not violate First Amendment by prohibiting male students from wearing the "Beatle type haircuts").

To establish a First Amendment retaliation claim, a plaintiff must show "(1) they were engaged in constitutionally protected activity, (2) the defendants' actions caused them to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the plaintiffs' exercise of constitutionally protected conduct." *Robles v. Aransas Cnty. Sheriff's Dept*., 2018 WL 1932742, at *5 (S.D. Tex. Apr. 23, 2018) (quoting *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)). "The inquiry is an objective one, as some retaliatory actions – even if they actually have the effect of chilling the plaintiff's speech – are too trivial or minor to be actionable as a violation of the First Amendment." *Id*. Although some actions may have the effect of chilling the plaintiff's protected speech, they are not actionable. *See Colson v. Grohman*, 174 F.3d 498, 511, 514 (5th Cir. 1999); *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 273-74 (2d Cir. 2011).

Elected representatives are entitled to First Amendment protection when responding to public criticism. *See Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 478 (2022).

7. Due Process Clause.

Controlling authority holds that there is no deprivation of a constitutional right when a student is placed in an alternative educational setting such as ISS. Thus, there is no question for the jury to decide.

The Fourteenth Amendment of the United States Constitution prohibits government from depriving a person of property without due process of law. U.S. CONST. AMEND. XIV. The State of Texas created a property right or entitlement to public education by electing by statute to provide free public-school education and to compel all youths between the ages of six and 18 years of age to attend school. *See Goss v. Lopez*, 419 U.S. 565, 573-74 (1975); TEX. EDUC. CODE §§ 4.001, 25.001, 25.085. However, by law, a transfer to an alternative learning placement (ALP), including ISS, does not involve a property or liberty interest. *See Nevares v. San Marcos Consol. Indep. Sch. Dist.*, 111 F.3d 25, 26-27 (5th Cir. 1997); *Esparza v. Bd. of Trustees*, 182 F.3d 915, at *4 (5th Cir. 1999); *Zamora v. Pomeroy*, 639 F.2d 662, 669 (10th Cir. 1981); *Doe v. Humble Indep. Sch. Dist.*, 2019 WL 3288385, at *4 (S.D. Tex. July 22, 2019); *see also Stafford Mun. Sch. Dist. v. L.P.*, 64 S.W.3d 559 (Tex. App.—Hou. [14th Dist.] 2001, no pet.). As students that are merely assigned to ISS, detention, or another ALP are not being denied access to public education (not even temporarily), formal notice is not required. *Nevares*, 111 F.3d at 26.

8. State law claims.

Texas law provides that an officer or employee of the state, or a political subdivision of the state, may not, because of a person's race or color or because of a person's sex: (1) refuse to permit the person to use facilities; (2) refuse to permit the person from

participating in a program managed by the state or political subdivision; (3) refuse to grant a benefit to the person; or (4) impose an unreasonable burden on the person. *See* Tex. Civ. Prac. & Rem. Code §§ 106.001(a)(3)–(6). However, this Court lacks subject matter jurisdiction over this claim because Plaintiffs cannot demonstrate each element. *See, e.g.*, *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629 (Tex. 2012)

In any event, the Texas Supreme Court held "[Section 106.001] was never intended to prohibit the adoption and enforcement of grooming standards by schools." *Bd. of Trustees of Bastrop Indep. Sch. Dist. v. Toungate*, 958 S.W.2d 365, 368-73 (Tex. 1997). Section 106.001 is only applicable to suits for preventive relief, including injunctions and restraining orders, and is not a vehicle for monetary damages or other relief. *See* Tex. Civ. Prac. & Rem. Code § 106.002 (exclusively authorizing suits for preventive relief, including injunctions and restraining orders); *see also Toungate v. Bastrop Indep. Sch. Dist.*, 842 S.W.2d 823, 828 (Tex. App.—Austin 1992, no writ) ("[T]he words 'any other order' are restricted to the same class of remedies as the introductory phrase, 'preventive relief.'").

Respectfully submitted

/s/ *Jonathan G. Brush*

Jonathan G. Brush
State Bar No. 24045576
Fed. I.D. No. 619970
Amy Demmler
State Bar No. 24092337
Fed. I.D. No. 3227731
Dylan A. Farmer
State Bar No. 24093417
Fed. I.D. No. 2462138
ROGERS, MORRIS & GROVER, L.L.P.
5718 Westheimer, Suite 1200
Houston, Texas 77057
Tel: (713) 960-6000
jbrush@rmgllp.com
ademmler@rmgllp.com
dfarmer@rmgllp.com

**ATTORNEYS FOR DEFENDANT BARBERS HILL INDEPENDENT SCHOOL DISTRICT**